# CHARLESTON

## EUREKA PIPE LINE CO. *v.* SIMMS *et al.*

Submitted March 5, 1907.    Decided November 19, 1907.

1. ARBITRATION AND AWARD—*Award—Sufficiency.*

Upon the question whether an award is within the terms of the submission, all fair presumptions should be made in favor of the award; and if on any fair presumption the award may be brought within the submission it should be sustained. (p. 636.)

2. SAME—*Uncertainty.*

An award will not be void for uncertainty although it does not specify the exact amount to be paid, where it gives the rule or indicates the means by which such sum can be calculated. (p. 638.)

3. SAME—*Setting Aside—Evidence.*

An award for damages for a right of way for a pipe line for the transportation of oil which it is claimed "is so grossly excessive as to indicate misbehavior and partiality on the part of the arbitrators," will not be held void in a suit brought for the purpose of setting aside the award, where there is no evidence in the record as to the value of the land subjected to the easement, nor as to the damages sustained by the taking of such right of way. (p. 638.)

Appeal from Circuit Court, Putnam County.

Bill by the Eureka Pipe Line Company against Robert G. Simms and others. Decree for defendants and plaintiff appeals.

*Affirmed.*

Payne & Payne and A. S. Alexander, for appellant.

Littlepage, Cato & Bledsoe and Chas. E. Hogg, for appellee.

McWhorter, Judge:

This was a suit in chancery filed by the Eureka Pipe Line Company in the circuit court of Putnam county against R. G. Simms and others for the purpose of setting aside an award made by arbitrators under an agreement in writing made between the plaintiff and defendants in a proceeding in condemnation begun in said court for the taking of a strip of land fifteen feet in width through the three farms of the defendants which lie contiguous to each other, and for the purpose also of enjoining and inhibiting the defendants from taking proceedings at law to have such award entered up as the judgment of the court, which injunction was granted. On the 28th day of November, 1902, notice of application for appointment of commissioners in condemnation proceedings was given and on the same day the parties entered into a written agreement to arbitrate the matters in difference between them and providing how the arbitrators should be chosen, and that the award made by the arbitrators should be final and conclusive on the parties to the agreement without the right of either party to appeal, the costs to be borne equally by the parties to the agreement; that is, one-half to the plaintiff and one-half to the defendants and that the award should be entered of record as the judgment of the court. It was further agreed that the arbitrators in considering the matters submitted to them should award the damages for the rights of way through the premises, "it being distinctly understood that no title to any part of the land of the said parties of the second part shall pass by reason of said proceedings or award, to the party of the first part, but only the rights of way, with ingress and egress to and from the same; and that the ditch which the party of the first part is to dig through the lands of the parties of the second part shall not be over three (3) feet wide, and to be properly filled up when the pipe has been laid; and that there be no pumping stations on said lands." And it was further provided and agreed that the Pipe Line Company or its successors or assignees might at any time lay a

second line of pipe along side of the first line subject to the same conditions and not more than three feet from the first pipe line, for which it should pay to the defendants an amount equal to the award of the arbitrators for the first line, or if either party desired the amount should be ascertained and fixed by arbitration in the same manner as the arbitration provided for in the agreement; and it was agreed that the applicant should go on with the construction of its pipe line as soon as the agreement was signed. The agreement recited that it was the desire of the pipe line company to acquire the right of way for a pipe line and to erect, maintain and operate a telegrrph line over and through the defendants' lands, but by endorsement on said agreement the Pipe Line Company agreed not to build a telegraph line through said lands under the agreement "and the damages therefore are not to be considered or allowed by the arbitrators." The arbitrators returned their award as follows: "Poca, W. Va., March 27th, 1903. To the Honorable F. A. Guthrie, Judge of the Circuit Court of Putnam County, W. Va.: We, the undersigned, do most respectfully report that we *meet* at Poca, Putnam County, W. Va., on the 26th day of March, 1903. in pursuance to the agreement herewith filed by The Eureka Pipe Line Company, a corporation, on the one side and J. B. Morgan, Jr., et als. on the other side and in pursuance to our selection to act as arbitrators in respect to the matters in difference, as set out in said agreement, and after being duly sworn as required by law and after examining the farms and premises mentioned and right of way proposed to be taken and hearing evidence of witnesses thereon and in respect thereto and arguments of counsel and fully considering the same we *find that the damages accruing to the defendants by reason of the said Pipe Line Company, taking the strip of land mentioned in said agreement for the purposes therein mentioned amounts to the sum of three dollars and fifty cents (3.50) per rod.* That said line runs through the Morgan heirs a distance of 71 rods—*and* staked off and shown to us. That said line runs through J. B. Morgan, Jr.'s land a distance of 212 rods, as staked off and shown to us. That the said line runs through R. G. Simms farm a distance of 110 rods, as staked off and shown

to us. That we began said view and hearing on the 26th day of March, 1903, and rendered this our award on this 27th day of March, 1903. All of which is respectfully submitted. Given under our hands and seals this 27th day of March, 1903. R. A. Salmons. James H. Martin. J. G. Cartmill."

The plaintiff exhibited with its bill copies of the application for the condemnation and notice thereof, the surveys and maps, together with a copy of the agreement and of the award. The bill alleges that the award should be set aside for the reason that it is uncertain; that it was obtained by undue means; that the arbitrators made a mistake; that they were guilty of misbehavior, and because of the misbehavior of counsel for defendants; and because the same is grossly excessive and exorbitant; that the defendants procured the arbitrators to sit at Poca where there was local prejudice against plaintiff of which plaintiff had no knowledge and defendants had no notice; that on discovering the prejudice plaintiff requested the arbitrators to go to the Court House of Putnam county, some seven miles away, which was the home of all the arbitrators, so as to be free from the prejudice, but defendants refused to go and that the misbehavior of the arbitrators consisted in their remaining at the village of Poca and completing their proceedings there when the prejudice was open and palpable; that while there was no moral wrong, yet it was unjust, unfair and improper for the arbitrators to continue the hearing at that place when they knew that the prejudice existed and that the defendants were trying to avail themselves of such influence to procure an exorbitant and excessive award; that defendants counsel did avail himself of it and appealed to the arbitrators to be influenced by it, stating "that that whole section of Putnam County was ablaze with excitement and that if they did not find a large award that the people in that section would be greatly disappointed in the arbitrators." And in speaking of the testimony of three of plaintiff's witnesses, who were reputable and men of character and intelligence and whose testimony was unbiased, fair and just, defendants' counsel said to the arbitrators: "May God help you if you are influenced by the testimony of these witnesses," or words to that effect. Alleging that the award

was excessive and exorbitant; that since the award was made the pipe was laid through the lands in question and that the distance was less than that found by the arbitrators; that the arbitrators admitted, at the instance of defendants and over the objection of plaintiff, much illegal evidence; that they permitted defendants to testify that they would give $500 for each farm if plaintiff would not run its pipe line through said farms, and that one of the defendants had offered plaintiff $500 not to run it through his farm, and permitted witnesses to testify as to the damages the pipe line would do to the farms, which witnesses admitted they had no experience or knowledge of the existence or use of pipe lines through farm land or anywhere; that these witnesses testified to enormous damages the pipe lines would cause, some estimating the damages as high as $25 per lineal rod, others as high as $40 per lineal rod, while another said $100 would not be too much, and another that the damages would equal the value of the farms.    While witnesses for plaintiff, who were tested as to their knowledge of the matter and who were familiar with it as their testimony showed, estimated the damages from $0.35 to $1.00 per rod; alleging that the arbitrators in making up their award were affected to some extent by such illegal testimony and by the prejudice which existed at Poca and by the improper appeals of defendants' counsel to such prejudice to the injury and prejudice of plaintiff.

Defendants filed their joint and separate answer denying that the arbitrators made any mistake or were guilty of misbehavior, or that they were influenced to any extent by illegal testimony admitted or by prejudice existing at Poca, or that such prejudice existed or that the award is uncertain, or that undue means were used by defendants or that they utilized the prejudice existing against the plaintiff at the place of hearing to procure a large award; averring that the place of hearing was mutually agreed upon by the parties; that the award is not excessive, but that it is less than defendants are entitled to; and denying that anything was said or done by counsel for defendants in the arbitration or in the submission of the evidence or argument before the arbitrators which might not be properly and legally done in any court.

On the 29th of December, 1904, the cause was heard upon the bill and exhibits, process duly served, proceedings at rules, upon the answer of the defendants and of the infant defendants by their *guardian ad litem*, with general replications to said answers "upon the depositions taken and filed in the cause on behalf of both the plaintiff and defendants," upon the former orders and proceedings and all papers filed in the cause and upon defendants motion to dissolve the injunction, when the court held that plaintiff was not entitled to the relief prayed for, dissolved the injunction and dismissed plaintiff's bill and decreed costs to defendants.

Have the arbitrators by their finding "that the damages accruing to the defendants by reason of the said pipe line company taking the strip of land mentioned in said agreement for the purposes therein mentioned amounts to the sum of three dollars and fifty cents ($3.50) per rod" kept within the agreement of submission? It is contended by appellant that this language of the arbitrators necessarily implies the taking of the strip of land mentioned, notwithstanding the provisions in said agreement to the contrary where it is specifically provided that the land is not to be taken, that no title shall pass, " but only the rights of way, with ingress and egress to and from the same." These words are by the act of the arbitrators as if written into their award they having filed the agreement with the award. It will be observed that the language of the award is that the damages accruing to the defendants by reason of the company taking the strip of land mentioned was for the purpose therein mentioned. The possession of the strip of land was taken for the purpose of laying the pipe; but the land, the title was not taken nor was it intended to be taken. Reading the award with and in the light of the agreement it cannot be said that the arbitrators intended by their words anything further than the use of the land for the laying of the plaintiff's pipe line, and the use of the rights of way to maintain, operate and remove the pipe line as provided by the agreement, and could not have intended that the land should be taken in the sense in which the plaintiff by its condemnation proceedings was in the first instance attempting to take the land. The word "taking" is suffi-

ciently qualified and limited in the award by the terms used in the agreement of submission. It is claimed that the arbitrators also considered the right of way by telegraph line. The agreement of submission which is made a part of the award contains specific endorsement signed by plaintiff that the same should not be considered. The use of the language of the award will be presumed to mean for the laying of the pipe line and the use of the land in maintaining, operating and removing the same, and cannot be presumed to go beyond the agreement of submission, when by giving it a fair construction it is within the intent and language of the same.

It is further contended that the award is uncertain, that the location is not made therein. The agreement under which the award is made and which sets out the proposed change in location according to the agreement of the parties, is made a part of the award and filed with the same and taken together the location would seem to be definite as all parties were present when the line was staked out and shown to the arbitrators. It will be further seen that in describing the right of way the award takes up each parcel, or the line through each of the properties, and says, "That said line runs through (A. B's,) lands a distance of — rods as staked off and shown to us," giving the number of rods which the line runs through each of the said parcels of land. It is further contended that the line viewed by the arbitrators was not the line laid down on the maps nor the line actually used. The line laid down on the map by the surveyor is not precisely that agreed upon in the agreement and used but there is no evidence in the cause showing that the line agreed upon was not the line actually used. The award shows that the arbitrators adopted the line staked off and shown to us." "Shown to us," by whom? By the parties, of course, as both parties were present by themselves or agents or attorneys and agreed upon the line. It is insisted that the award is so grossly excessive as to indicate misbehavior and partiality on the part of the arbitrators, that the damages allowed are greater per acre than the land is worth, although little damage is done. There is not a scintilla of evidence in the record relating to the value of the land, whether it is worth one dollar, one

hundred dollars or a thousand dollars per acre. It appears from the record that the land through which the pipe line was laid was composed of three contiguous farms and this is all the information the record gives concerning it. Is it the province of this Court to take judicial knowledge of the values in litigation in the absence of any evidence in relation thereto? This Court is confined to the record for information touching the facts and cannot go beyond it. Should it do so and enter the realm of speculation its guessing might prove disastrous to one or the other of the parties, and in any event it would not be in condition to render as just a decision as a board of arbitrators who are acquainted with the matters involved in the controversy and who are mutually chosen by the parties because of their sound judgment and discretion and their peculiar fitness for the duties imposed upon them, and who not only viewed the premises but had the aid of all testimony which the parties saw proper to adduce before them bearing upon the matters to be considered. We know not the testimony upon which the arbitrators acted.

A charge in plaintiff's bill that defendants procured the said arbitrators to hold their sitting in the village of Poca knowing that there was a decided prejudice existing in the said village against the plaintiff, that plaintiff was not aware of the said prejudice before the arbitrators began the hearing, that soon after the hearing began the plaintiff discovered the prejudice and requested the arbitrators to go to the court house that they might be removed from such prejudice. This allegation is denied in the answer wherein it is averred that the place of sitting was agreed upon by the parties, defendants and counsel for plaintiff, because of the convenience of the place to the rights of way to be examined, and it cannot be said that the arbitrators were guilty of misbehavior in refusing to change the place of sitting to a place seven miles distant upon the mere suggestion of the plaintiff, nor was it misbehavior on the part of the defendants' counsel to object to such change, it not appearing that any tangible evidence was brought to the attention of the arbitrators to support the motion for such removal. In *Burchell* v. *Marsh*, 58 U. S. 344, it is held: "If an award is within the submission, and contains the honest decision of

the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact." In *Brush* v. *Fisher*, 79 Mich. 469, (14 Am. St. Rep. 510), it is held: "Awards are favored in law and reluctantly set aside. Every presumption is made in favor of their fairness, and the burden of proof is on the party seeking to set them aside to do so by clear and strong proof." At page 512 of said decision the court quoting from *Railway Co.* v. *Callanan*, 61 Mich. 26 says: "There is power in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrators, or they have acted under manifest mistake, and perhaps in some defined and undefined cases. But it is evident that there are greater objections to any general interference by courts with awards. They are made by a tribunal of the parties' own selection, who are usually, at least, expected to act on their own view of law and testimony more freely and less technically than courts and regular juries. They are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that, after resorting to such private tribunals, either party may repudiate their action, and fall back on the courts. And equity, on whatever pretext it may intervene in such cases, does so upon the reason that the tribunal has not really acted within the lines of the duty laid upon it, and has not in fact carried out the agreement under which it has obtained authority to proceed." Caldwell on Arbitration, at page 123 says, "It is a maxim of courts, both of law and of equity, never to raise a presumption for the sake of overturning an award; but, on the contrary, to make every reasonable intendment in his support."

Upon the question whether an award is within the terms of the submission all fair presumptions shall be made in favor of the award; and if on any fair presumption the award may be brought within the submission it should be sustained. *Pollock* v. *Sutherlin*, 25 Grat. 78; *Richards* v. *Brokenbrough*, 1 Rand. 449; *Coons* v. *Coons*, 95 Va. 438, 28 S. E. 885; *Armstrong* v. *Armstrongs*, 1 Leigh 491. In *Fluharty* v. *Beatty*, 22 W. Va. 698: "Presumptions are not to be raised for the purpose of overthrowing

awards, but the awards are to be liberally construed so as to give effect and operation to the intent of the arbitrators, where it can be done, and every reasonable intendment is to be made in their support." "When the value of the property in money is referred to arbitrators and they fairly execute the submission, generally, the award cannot be set aside or determined to be invalid upon the ground that the valuation is exorbitant." Point 16, Syl., *Dickinson* v. *Railroad Co.*, 7 W. Va. 390. In his opinion in *Underhill* v. *Van Courtlandt*, 2 John. Ch. (N. Y.) 339, Chancellor Kent at page 360 says: "Much testimony has been taken to prove that the mill was greatly overvalued. I shall not enter into the discussion of that part of the proof. Every other point has been considered with all possible indulgence, and even so much so, that a good deal of testimony has been read and considered, which, upon strict rule, and even upon principles of policy and justice, ought to have been suppressed. But here I think the settled decisions of the court interpose an insuperable obstacle to the investigation of the question respecting the measure of valuation. Admitting that there was no corruption or partiality in the arbitrators, (and none is pretended,) and admitting that there was no misconduct in them during the course of the hearing, nor of fraud in the opposite party, (and none is established by proof,) then, I say, the court cannot inquire into the charge of an over or under valuation, or of the reasonableness or unreasonableness of the award, but it is binding and conclusive. If every award must be made conformable to what would have been the judgment of the court in the case, it would render arbitrations useless and vexatious, and a source of great litigation; for it very rarely happens that both parties are satisfied. The decision by arbitration is the decision of a tribunal of the parties' own choice and erection. It is a popular, cheap, convenient, and domestic mode of trial, which the courts have always regarded with liberal indulgence; they have never exacted from these unlettered tribunals, this *rusticum forum*, the observance of technical rule and formality. They have only looked to see if the proceedings were honestly and fairly conducted, and if that appeared to be the case, they have uni-

formly, and universally, refused to interfere with the judgment of the arbitrators."

It is contended that the award should have ascertained the amount of damages, a sum certain, not so much per rod to be paid the defendants for the right of way, that a judgment could not properly be entered on the award. In 3 Cyc. at page 708: "When an award furnishes a substantial basis by and through which the parties can, by calculation, by reference to a fixed standard or rule of law, * * * work out the contemplated result in accordance with the principles settled by, and the rights of the parties declared in, the award, it will be regarded as sufficient. In such cases courts give much force to the maxim *certum est quod certum reddi potest.*" And authorities cited. And in 2 A. & E. E. L., 758, it is said: "An award will not be void for uncertainty although it does not specify the exact amount to be paid, if it gives the rule or indicates the means by which such sum can be calculated." And at page 778: "The weight of authority in the United States leans toward making absolute the certain and simple rule that the award of the arbitrators, when made in good faith, is final, and that it cannot be questioned or set aside for a mistake either of law or of fact." Citing decisions in support of the proposition not only several cases from the Supreme Court of the United States but many decisions from at least twenty-nine states of the Union; and the reason for this rule is well expressed by Chancellor Kent in the quotation I have made above from his very able opinion in *Underhill* v. *Van Coirtlandt*; and also Shaw, C. J. in *Boston Water Power Co.* v. *Gray*, 6 Met. 131. See also *Pleasants* v. *Ross*, 1 Wash. (Va.) 156.

Appellant says the award should be set aside because the arbitrators admitted illegal evidence when the agreement of submission only authorized the admission of legal evidence. There is nothing in the record so show what evidence was before the arbitrators except an allegation of the bill that mentions one or two fragments of testimony on behalf of defendants of which complaint is made. In *Bigelow* v. *Newell*, 10 Pick. 348: "Where an action and all matters in dispute between the parties, were submitted to referees, with authority to settle the rights of the parties and to

make such special award as the nature of the case might
in their opinion require 'always having regard to the legal
rights of the parties' it was held that this clause intended
merely to prescribe a rule as to the principles upon which
the referees were to decide, and was not intended to re-
strain them from determining questions of law as well as
questions of fact; and consequently that their award was
conclusive as well of the law as the fact." "The admission
by arbitrators of improper or illegal evidence as the result of
an honest mistake of judgment as to its admissibility or prob-
ative force is not ordinarily ground for impeachment of the
award. To constitute ground of impeachment, it must
plainly appear that the award was so based upon the im-
proper evidence that the decision would have been different
but for its admission; and it has been held that the same
rule applies to the rejection of legal evidence under circum-
stances not amounting to a refusal to receive such evidence
on the merits, but only showing a mistaken construction of
the rules of evidence."—3 Cyc. 737. And it is there fur-
ther said: "An honest mistake of arbitrators in the effect
or weight given by them to certain portions of the evidence
is not such an impropriety as may be shown to impeach the
award."

There is no intimation of fraud or corruption on the
part of the arbitrators in case at bar. We find no reversi-
ble error in the decree of the circuit court and therefore af-
firm it.

*Affirmed.*