# CHARLESTON.

Boomer Coal & Coke Company *v.* M. H. Osenton
(No. 5619)

Submitted May 11, 1926.    Decided May 25, 1926.

1. Arbitration and Award—*Where Matters in Law Action are Submitted to Arbitration by Parties Who Are Afforded Opportunity to be Heard and Present Evidence, Court Will Not, on Application to Set Aside Award, Review Evidence, in Absence of Corruption, Partiality, or Fraud (Code, c. 108, §§ 1, 4).*

Where the matters in controversy in an action at law are submitted by the parties to arbitration, under the provisions of the statute, and all parties thereto are afforded an opportunity to be heard and present all their evidence to the arbitration tribunal, the court will not thereafter, on an application to set aside the award made therein, review the evidence submitted for the purpose of determining the correctness of said award, in the absence of corruption or partiality in the arbitrators, or fraud practiced by one of the parties to the arbitration.    (p. 693.)

(Arbitration and Award, 5 C. J. § 465.)

2. Same—*If Strict Rules of Legal Procedure Are Waived Under Arbitration, Award Will Not be Set Aside for Mistake of Law, Unless so Glaring as to Shock Conscience and Warrant Conclusion That Arbitrators Were Biased, Prejudiced, or Influenced by Ulterior Motive.*

In such case, where the strict rules of legal procedure are waived under the terms of the arbitration, the award will not be set aside for a mistake of law, unless it is so glaring as to shock the conscience and warrant the conclusion that the arbitrators were biased, prejudiced, or influenced by some ulterior motive.    (p. 694.)

(Arbitration and Award, 5 C. J. §§ 469, 473.)

3. Same—*Where, on Arbitration no Proof Was Offered of Loss of Coal Under One Tract, Finding in Award That no Coal Was Lost There Amounted to Adjudication of Such Part of Subject Matter, and Was Conclusive That it Was Not Withdrawn From Adjudication.*

Where all matters embraced in an action of covenant in a coal lease for loss and abandonment of coal in divers tracts

of land are submitted to arbitration, no proof being offered
of loss of coal under one tract, a finding in the award that
no coal was lost in said area is conclusive against the with-
drawal of said tract from the arbitration, and amounts to
an adjudication of this particular part of the subject matter.
(p. 695.)

(Arbitration and Award, 5 C. J. § 341.)

4.  SAME—*If Nothing in Submission in Arbitration Provides How
    Award Should be Published or Communicated to Parties,
    no Particular Form or Kind of Notice to Parties is Re-
    quired.*

    If there is nothing in the submission, providing how the
    award should be published or communicated to the parties,
    no particular form or kind of notice to the parties is required.
    (p. 697.)

    (Arbitration and Award, 5 C. J. § 282 [Anno].)

5.  SAME—*After Arbitrators Had Made Decision and Openly An-
    nounced it, Fact That One of Counsel for Prevailing Party,
    at Instance of Arbitrators and in Absence of Opposing
    Counsel, Put in Form Finding as Announced, is Not Ground
    for Setting Aside Award, Though Arbitrators Solicited and
    Received Opinion of Such Counsel as to Legal Effect of
    Certain Finding Therein.*

    After the arbitrators had made their decision and openly
    announced it, the fact that one of counsel for the prevailing
    party, at the instance of the arbitrators, and in the absence
    of opposing counsel, put in form the finding as theretofore
    announced, is not ground for setting aside the award, al-
    though at the same time the arbitrators solicited and re-
    ceived the opinion of such counsel as to the legal effect of a
    certain finding therein.    (p. 696.)

    (Arbitration and Award, 5 C. J. § 481.)

6   SAME—*If Agreement of Submission Provides Award of Two
    Arbitrators May be Binding, Award Will Not be Vitiated
    Because One Arbitrator Was Absent When Finding Was
    Considered, in Absence of Showing That Such Arbitrator
    Had no Notice of Session.*

    In case the agreement of submission provides that the
    award may be binding when made and signed by any two of
    the arbitrators, such award will not be vitiated because one of
    the arbitrators was absent at a session of the board after all
    the evidence had been taken and their finding was under con-

sideration, where it does not appear that the absent arbitrator had no notice of such session.    (p. 697.)

(Arbitration and Award, 5 C. J. § 217.)

7.  SAME—*Where it Was Not Provided in Agreement of Arbitration That Arbitrators Should Personally Inspect Premises, and no Request for Inspection Was Made, Their Failure to Make Inspection Was Not Misconduct.*

Where it was neither expressly nor impliedly provided in an agreement of arbitration that the arbitrators make a personal inspection of the premises, and no request was made that they do so by either party to the arbitration, it is a matter within the discretion of the arbitrators whether such inspection be made.  The failure to do so under such circumstances will not amount to misconduct on their part.  (p. 698.)

(Arbitration and Award, 5 C. J. § 221.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Fayette County.

Suit by the Boomer Coal & Coke Company against M. H. Osenton to impeach and set aside an award of arbitrators. From a decree dismissing the suit, plaintiff appeals.

*Affirmed.*

·  *Payne, Minor & Bouchelle,* for appellant.

*Osenton & Lee,* for appellee.

WOODS, JUDGE:

The sufficiency of a bill in chancery to invalidate an award of arbitrators is the sole question involved in this appeal.

The Boomer Coal & Coke Company is the owner and operator of certain coal mining properties in the county of Fayette.   Included in the property operated by it are two tracts of land consisting respectively of 1,000 acres and 174 acres, an undivided one-half interest in fee in which is owned by it and the remaining one-half undivided interest is owned by M. H. Osenton, whose predecessors in title leased her said one-half undivided interest in said two tracts to said coal company, by lease dated August 15, 1900.   On the 11th day of April, 1922, M. H. Osenton instituted an action in covenant in the circuit court of Fayette county, against said coal company, returnable to May Rules, 1922, at which rules her declaration in said cause was filed, alleging breach of the covenant

of said lease "to prosecute and carry on its operations under this lease in an active, vigorous, safe, skilful and workmanlike manner according to the rules of good mining and the laws of the State of West Virginia and in such a manner as to mine all the merchantable coal practicable, having due regard as to value of the demised premises as coal property," and the loss and abandonment thereby of a large tonnage of coal in said two tracts. This declaration declared upon the said lease of August 15, 1900, damages being laid at $25,000.00 in both the writ and declaration, and alleging a total loss and abandonment in the 1,000-acre tract of 777,000 tons of coal, upon a royalty of 3c per ton of 2240 pounds. And the said declaration contained the further like averment as to a tract of 328 acres, without specifying the tonnage of coal lost.

In pursuance of § 1, Ch. 108, Code, providing for the submission to arbitration of controversies in a pending suit, the parties to this appeal, on the 25th day of November, 1924, entered into the following agreement of submission:

> "Whereas, the above entitled action brought by the plaintiff, M. H. Osenton against the defendant, Boomer Coal & Coke Company, is now pending in the circuit court of Fayette county, West Virginia, in which plaintiff claims damages from the defendant in the sum of $25,000.00, as shown by the declaration, a copy of which is attached hereto and made a part of this agreement; and
>
> Whereas, the defendant denies any liability on account of said claim; and
>
> Whereas, in order to avoid the cost and inconvenience of a trial of said case in court, the parties hereto have mutually agreed that all matters in controversy within the scope of said suit shall be adjusted, settled and finally determined by arbitration.
>
> Now, therefore, this agreement witnesseth, that in consideration of the premises the parties hereto mutually agree as follows:
>
> (1) That the said controversy shall be and the same is hereby, submitted to the arbitrators hereinafter named, who shall hear, settle and determine by arbitration the matters in controversy

within the scope of said suit; and the following parties are hereby agreed upon as arbitrators and authorized to act in the premises, viz: J. S. Thurmond, of Alderson, West Virginia, E. M. Merrill, of Charleston, West Virginia, and George Wolfe, of Beckley, West Virginia.

(2)   All matters in controversy arising in this proceeding shall be submitted to said arbitrators and it is agreed that the finding and award made by said arbitrators in writing and signed by them or by any two thereof shall be final and taken and accepted as a complete adjustment of all matters in controversy in said cause and shall be entered as the judgment of the court.

(3)   Said arbitrators shall make such examination of the premises as they may deem necessary and proper and examine such maps and hear such testimony as may be offered by the parties hereto, which testimony shall be taken under the general rules and regulations governing testimony offered in court, but it is agreed that strict rules of procedure will be waived.

(4)   That said arbitrators, when they have made such examination of the premises as they may desire, and have heard and considered the evidence of the parties hereto shall make their finding and report in writing which shall be final as aforesaid and entered as the judgment of the court.

(5)   Before proceeding to act the said arbitrators shall take the oath prescribed by law in such cases, unless waived by the parties.

(6)   Said arbitrators shall have the authority to fix and determine upon the place of hearing such evidence as may be offered by the parties, in addition to the examination of the premises to be made by the arbitrators.

(7)   The prevailing party shall recover costs of this arbitration and the same shall be taxed in the judgment of the court as a part of the cost of the case.

In witness whereof the said M. H. Osenton has hereunto set her hand and seal and the said Boomer Coal & Coke Company has caused its corporate name to be signed and its corporate seal affixed thereto by its president, thereunto duly authorized.

Boomer Coal & Coke Company
(Corporate Seal)        By Michael Gallagher,
                        Vice President
                M. H. Osenton    (Seal)."

On the 14th day of February, 1925, the coal company tendered and filed its ten several special pleas in such action in covenant. Special Plea No. 1 was for the purpose of putting the entire lease in the record, which was not done by the declaration. Special Plea No. 2 is the general plea of covenants performed. The other pleas were for the purpose of raising the statute of limitations, to which replication was made, and pleading specially certain provisions of the lease. The three arbitrators fixed March 2nd, 1925, for the hearing of the matters submitted to them, and the place the Kanawha Hotel in the City of Charleston.

Mrs. Osenton furnished the coal company with a bill of particulars referring to a plat and specifying thereon what portions or sections of the leased premises were claimed to have been lost or abandoned, setting out the tonnage in each, the minimum total loss claimed in the No. 2 Gas seam being 571,000 tons. In the Eagle seam the areas were likewise marked on a plat where coal was lost, as "abandoned", "recovery improbable", "slight recovery possible", and "flooded out", setting out the loss of tonnage claimed in each area, making a total loss in the Eagle seam of 360,000 tons. No loss is claimed for the 328-acre tract.

The coal company took exception to said bill of particulars on the grounds that the specifications of tonnage lost were too general; the designation of 74,000 tons of coal of No. 2 Gas, in Mine No. 3, and 81,000 tons in Mine No. 4 as lost by general bad mining, with no further specifications, being indefinite; and specifications for tonnage lost in Eagle seam designated "recovery improbable", "slight recovery possible", were not certain and definite enough; specifications claiming a minimum loss of 125,000 tons in Eagle seam due to bad mining, without further specification was not proper for arbitrators to consider; and because the same eliminated from consideration by the arbitrators any claim for coal lost in the

tract of 328 acres. The coal company thereupon submitted
its defenses to the bill of particulars, in which each item was
taken up, and denial of the loss of tonnage claimed therein;
that the mines are still being operated, and that the coal com-
pany will recover all coal that is reasonably susceptible of
profitable mining; that in certain areas there are inherent
defects in the seams of coal that render it unprofitable to mine
at this time; that as for certain losses in the Eagle seam the
coal company will claim that it has removed from such areas
all coal reasonably susceptible of profitable mining; that it
is still actively engaged in the operations of the mines de-
scribed in the bill of particulars, except that the operations
of its mines have been suspended for the past fifteen months,
due to the prevailing general conditions in the mining in-
dustry, it being unprofitable at this time to operate said
mines.

The arbitrators thereupon proceeded to hear and deter-
mine the matters in controversy. Over two days were con-
sumed in hearing testimony. On March 3rd, all the evidence
being completed, both sides announcing that they had intro-
duced all evidence that they desired to offer, an adjournment
of the arbitrators was taken until March 23rd. On the latter
date the arbitrators reconvened at the City of Charleston,
when all of the members were present, and held a conference
lasting throughout said day until midnight, at which evening
session one of the arbitrators was absent. On the following
morning the arbitrators assembled, all being present, and the
chairman thereof announced that it had decided to allow the
defendant, M. H. Osenton, the full amount claimed by her in
her bill of particulars. Later in the day the award was re-
duced to writing and signed by all three of the arbitrators.
The body of the award is as follows:

> "We, the undersigned Arbitrators, beg leave to
> report that, after first being duly sworn, we heard
> all of the evidence offered by the plaintiff and the
> defendant in this case, including all maps and
> other papers filed as exhibits, and argument of
> counsel for both plaintiff and defendant submitted

in the form of written briefs, and file this as our finding and award.

We find that the defendant is liable for damages to the plaintiff for breach of the terms, conditions and covenants of the lease as alleged in the declaration, and by reason of such breach of the terms of said lease there has been lost to the plaintiff the coal hereinafter set out and described, and for which the defendant is liable to the plaintiff in the amounts herein specified.

The following losses have occurred in seam known as No. 2 Gas in the portions of said leased premises as hereinafter indicated:

Mine No. 4; first, second, third, fourth and fifth east off main north, 45,000 tons lost.

Mine No. 4; 17,000 tons lost right west.

Mine No. 4; off south-face entry, 27,000 tons lost.

Mine No. 4; off south-face entry, 7,000 tons lost.

Mine No. 3; sixth, eighth and tenth entries east off No. 6 south, 70,000 tons lost.

Mine No. 3; No. 8 east and 10 east and No. 8 west and 10 west off Nos. 3 and 4 south, 290,000 tons lost (marked on Whitaker's Map as 250,000 tons).

General bad mining in Mine No. 3 in violation of the terms, conditions and covenants of said lease, loss on acreage mined, 74,000 tons—same for No. 4 mine, loss 81,000 tons.

The minimum total loss in the No. 2 Gas seam being 611,000 tons.

There is filed herewith as a part of this award a tracing introduced in evidence in this case by the witness Robert B. Whitaker, entitled 'Portion of Mines of Boomer Coal & Coke Co. (No. 2 Gas Seam) on the Williamson 100 and 174 acre tracts. Scale 1 inch=200 feet. Compiled from existing maps and inspected in March, 1921. Robt. B. Whitaker, Engr., Charleston, W. Va. Reinspected 12-19 & 20-1924. R. B. W.' and for further identification bearing the signatures of the members of this Board of Arbitration and dated March 24, 1925, on which map said losses are indicated.

We find that in addition to the coal lost in the No. 2 Gas seam as hereinabove specified, that there has been lost by the defendant in the Eagle seam by reason of bad mining in violation of the terms of said lease, as alleged in said declaration, the fol-

lowing tonnage, located as follows, to-wit:

108,000 tons in the areas on the tracing of said Eagle seam introduced in the evidence by witness Robert B. Whitaker and entitled 'Portion of Mines of Boomer Coal & Coke Co. (Eagle Seam) on the Williamson 1000 and 174 acre tracts. Scale 1 inch =200 feet. Compiled from existing maps and inspected in February, 1921. Robt. B. Whitaker, Engr., Charleston, W. Va. Reinspected 12-18 & 20—1924. R. B. W.' and which, for further identification bears the signatures of the members of said Board of Arbitration and is dated March 24, 1925, and which areas tracings is filed herewith as a part of this award, which areas in which the said tonnage is lost are enclosed with black marks and marked on said tracing 'Abandoned.'

We further find that there has been lost in said Eagle seam 90,000 tons in the areas marked on said tracings 'Recovery Improbable'.

We further find that there has been lost in said Eagle seam 17,000 tons in the area marked on said tracing 'Slight Recovery Probable' and enclosed in black dotted lines.

We further find that there has been lost in said Eagle seam, in the area marked on said tracing 'Flooded out—Pillars can be recovered', 20,000 tons, and said last mentioned area for further identification is marked on said tracing 'Klondike'.

We further find that there has been lost in said Eagle seam due to bad mining in violation of the terms and covenants of said lease, in addition to the losses hereinbefore specified in said seam, 125,000 tons, which last mentioned loss is due to the fact that the pillar coal was not mined as the rooms were completed, or, in case it was necessary to leave the coal, more coal should have been left standing so that it could be mined without having to clean up the old rooms; and that the total loss in said Eagle seam is 360,000 tons.

We further find that all of said coal has been actually lost due to bad mining by the defendant in violation of the terms of said lease, and as alleged in the said declaration, and that the total lost tonnage, as hereinbefore specified, is 971,000 net tons, which said net tons amount to 886,964 gross tons, the lease providing for royalty of six cents for each gross ton.

We therefore find that the defendant is liable to the plaintiff and should pay for said lost coal. hereinbefore specified the sum of Twenty-six Thousand and Eight Dollars and Ninety-Two Cents ($26,008.92), but that the plaintiff having sued for only Twenty-Five Thousand Dollars ($25,000.00) can not recover in excess of that amount, and we therefore find that the plaintiff shall recover from the defendant for said coal the said sum of Twenty-Five Thousand Dollars ($25,000.00), with interest from this date until paid.

We further find that as to the area designated in the declaration as 328 acres in which plaintiff claims there was certain coal lost, mentioned in the third count of the declaration, the evidence fails to show that any coal has been lost in said last-mentioned area, and if coal exists in said area the defendant will yet be able to mine and remove the same.''

The instant suit was instituted in the circuit court of Fayette county, March 30, 1925, to impeach and set aside the above award. The award of the arbitrators was filed in the said circuit court May 5, 1925, and the defendant moved that said award be entered up as the judgment of the court, which motion, by agreement of counsel, was continued on that date and continued at a later term on October 14, 1925. This cause came on to be heard upon demurrer to the bill, which demurrer was sustained October 2, 1925, and plaintiff not electing to amend its said bill of complaint, the same was dismissed and judgment for costs entered. The coal company comes here on appeal from this decree. Numerous errors are assigned, some of which are general in their nature, and will be noticed by us in the discussion of other specific assignments.

The grounds on which the award is sought to be impeached resolve themselves into three classes: (1) That the award is against the weight of evidence, that illegal and improper evidence was considered and proper evidence offered by the plaintiff was ignored, and that mistakes of law were made.

therein. (2) That the arbitrators were not free from partiality. (3) That the arbitrators were guilty of various acts of misconduct.

The statute, § 4, Ch. 108, Code, provides that no award shall be set aside, except for errors apparent on its face, unless it appears to have been procured by corruption or other undue means, or by mistake, or that there was partiality or misbehavior in the arbitrators or any of them. The submission here is very broad in its terms and makes no restrictions on the powers of the arbitrators. The strict rules governing an action at law are not applicable to a proceeding of this nature. An arbitration, while it partakes of the nature of a *quasi* judicial proceeding, it is not such a proceeding in a technical sense. It is a domestic tribunal as distinguished from a regular organized court. The very existence of the tribunal depends upon the voluntary actions of the disputants. They select their own judges. Its object and aim is to arrive at a just determination of the matters in dispute, and finally dispose of the same in a speedy and inexpensive way. The arbitrators are usually laymen, inexperienced in the technical rules of law, selected because of their intelligence and integrity, and with the belief that they will do substantial justice between the parties. To require an arbitrator to follow the fixed rules of law in arriving at his award would operate to defeat the object of the proceeding. The courts of this country have adhered with great steadiness to the general rule that awards will not be set aside for errors of law or fact on the part of the arbitrators. 2 R. C. L. 386. Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth *res judicata,* on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy. *Chapline* v. *Overseers,* 7 Leigh (Va.) 231; *Curley* v. *Dean,* 4 Conn. 259; *Stose* v. *Heissler,* 120 Ill. 433; *Roberts* v. *Consumers' Can Co.,* 102 Md. 362; *Chandos* v. *Insurance Co.,* 84 Wis. 184.

We may remark, that it is impracticable to reproduce the testimony. This testimony is both oral and documentary.

Numerous maps were introduced in evidence. This evidence comprised over four hundred pages in the printed record. It is contended that the conclusion reached by the arbitrators is not justified by the evidence submitted to them. Of the evidence adduced, the arbitrators were the sole judges of its weight, and were free to adopt such a course as they deemed best adapted to a just decision of the matters in controversy. Although the court might have rendered a different decision, it will not substitute its judgment for that of the arbitrators. *Van Winkle* v. *Continental Insurance Co.,* 55 W. Va. 287; *Dickinson* v. *C. & O. Ry. Co.,* 7 W. Va. 390. As the court said in *Burchell* v. *Marsh,* 17 Howard 344: "A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement not the end of litigation." Such errors are among the contingencies which parties assume when they select such tribunals. To review the case on the merits would be to turn this proceeding into an appeal from the judgment of the arbitrators. The rule is generally that, in the absence of any misconduct or want of good faith on the part of the arbitrators, the mere fact the award was too high or too low, as the case may be, is not sufficient to induce the court to interfere. *Eureka Pipe Line Co.* v. *Simms,* 62 W. Va. 628. In other words, where the arbitrators have exercised their judgments fairly, after giving all the parties an opportunity to be heard and present all their evidence, this Court, in the absence of any evidence of bad faith, will not review their judgment. *Brush* v. *Fisher,* 70 Mich. 469; *Everett* v. *Brown,* 198 N. Y. S. 462; *Donaldson* v. *Buhlman,* 134 Wis. 117. Neither will an award be set aside for a mistake of law, where the strict rules of legal procedure were waived under the terms of the arbitration, as here, unless it be so glaring as to shock the conscience and warrant the conclusion that the arbitrators were biased, prejudiced or influenced by some ulterior motive. *Brodhead-Garrett Co.* v. *Lumber Co.,* 97 W. Va. 165. With these remarks applicable to the general aspect of the case, we will now proceed to consider the alleged acts of misconduct of the arbitrators.

The first act goes to the procedure. It is contended that the bill of particulars were indefinite in this, that in referring to a map filed as part thereof, a certain area was designated as "recovery improbable" and another area designated as "slight recovery possible." This bill of particulars was furnished at request of counsel for appellant. It put them on notice as to the portions or areas in the mines where the plaintiff claim coal had been lost by reason of improper mining. It is to be remembered that the bill of particulars is not to be considered as evidence. In the matter of arbitration the pleadings are not expected to possess the formality of precision as characterizes a pleading in a court of law. In fact the agreement here provided "that strict rules of procedure will be waived". But, if we were to apply the rule of the legal forum, if the bill of particulars was insufficient, the appellant's remedy would have been to have objected to the evidence upon that ground. It did not do so, and having failed in this particular, or to move to exclude the evidence offered thereunder, such objection to the bill of particulars was waived. Code, Ch. 130, § 46; *Stephenson* v. *Collins,* 57 W. Va. 351; *Tucker* v. *Fire Insurance Co.,* 58 W. Va. 30; *Abell* v. *Insurance Co.,* 18 W. Va. 400.

Another ground urged relating to procedure is that the tract of 328 acres was withdrawn from the arbitration. The bill of particulars merely stated that no claim would be made for lost coal in this area. In other words, no evidence would be offered in support of that allegation in the declaration. Had the matter been heard by a jury, in the absence of any evidence of coal lost under said tract, the finding as to such tract would have been for defendant. The matters to be determined by the arbitrators were confined under the agreement of arbitration "to the matters in controversy within the scope of the suit." Did the failure to produce evidence of the loss of coal from this tract amount to a withdrawal of the area from the arbitration? We do not think so. "Where all matters are embraced in an action submitted to arbitrators, and they make no mention in their award of one item of charge claimed by one of the parties, they will be taken to have disallowed it." *Long* v. *Fitzgerald,* 97 N. C. 39. Obviously, the

award here embraced the whole subject matter submitted, and must be understood as covering everything in the submission. In the instant case the arbitrators found that the evidence failed to show that any coal had been lost in this area and this finding is conclusive against the theory of withdrawal, and amounts to an adjudication of this particular part of the subject matter. *Eureka Pipe Line Co.* v. *Simms, supra; Tennant* v. *Divine,* 24 W. Va. 387; *Fluharty* v. *Beatty,* 22 W. Va. 698.

Another act of misconduct on the part of the arbitrators, it is alleged that one of counsel for the appellee, at the instance of the arbitrators, wrote the award in the absence of the other party or its counsel. In *Fetherstone* v. *Cooper,* 9 Ves. Jr. (Eng.) 67, a bill was filed to set aside an award upon the ground that the award was prepared by the solicitor of the defendant. But Lord Eldon said: ''The circumstance that the award was prepared by the solicitor for the defendant, though indelicate, is no ground for setting aside the award.'' In *Underwood* v. *Bedford Railroad Co.,* 103 E. C. L. 442, after the evidence was all in, the arbitrators consulted the attorney for one of the parties in reference to the award and the attorney prepared it. Erle, C. J. said: ''I very much disapprove of an arbitrator consulting the attorney of one of the parties  *  *  *  as to the form of his award.  *  *  * But I am not prepared to say that it is ground for setting aside the award, if the arbitrator had previously made up his mind as to the substance of the award, and merely consulted the attorney upon the framing of it.'' The simple fact that the award was considered and made in the office of the attorney for one of the parties will not set aside the award. *Brodhead-Garrett Co.* v. *Lumber Co., supra.* This Court has held that a commissioner in chancery is a quasi judicial officer and all his findings should be his alone, but if the attorney for one of the parties renders him assistance in the mechanical preparation of his report, or aids him in putting it into form, exceptions to it based upon the rendering of such assistance should be overruled, where the findings are those of the commissioner and are correct. *Woolen Mfg. Co.* v. *Nelson,* 96

W. Va. 617. In the present case, the consultation, such as it was, was after the arbitrators had made their decision and openly announced it to the interested parties. It is a matter of common practice in our courts after the decision of the chancellor is announced from the bench that counsel for the party prevailing puts the decision in writing for entry of record. Thus it is seen that the arbitrators here conformed to approved rules of procedure obtaining in the courts of the state. It is not alleged that the award as drawn does not contain just what the arbitrators agreed upon; and, that being the case, it is of but little importance who drew it. We are wholly unable to see any impropriety in the act of the arbitrators here complained of, or on the part of the solicitor who performed the service at their instance.

The appellant insists that it is an act of misconduct for the arbitrators to prepare the finding in the absence of the appellant or its counsel. It is to be noticed there is nothing in the submission providing how the award should be published or notified to the parties; and this being the case, it is settled law that no particular form or kind of notice is required. Morse on Arbitration, 285, states the rule that publication of an award is necessary only where the submission expressly stipulated that it shall be published or notified to the parties. The allegations in the bill show that the arbitrators acted in the orderly way of a chancellor in convening their body, announcing the result, and later reducing it to writing, and after signing it, handing it to counsel for both interested parties. Nor, in this connection, can we hold that the arbitrators' request to one of counsel for appellee for an opinion as to the legal effect of a certain part of their finding amounted to misconduct, in view of the fact that their finding had already been announced. There is no proof in the case tending to show that the award as drawn does not contain just what the arbitrators had agreed upon, and in fact there is no allegation in the bill to this effect. The appellee, hence was not prejudiced. *Kane* v. *Fondulac,* 40 Wis. 495.

Further, appellant assigns as an act of misconduct, the fact that one of the arbitrators was absent at the night meeting

when the award was being considered. Arbitrators do not retire under a sworn bailiff to consider the verdict. They are more like judges of a court than jurors. *Flatter* v. *McDermott*, 25 Ind. 326. The arbitrators were together at all times during the trial of the case. In *Greenfield County* v. *Spartanburg County*, 62 S. C. 105, the court held: "In the absence of fraud or palpable mistake apparent on the face of an award in an action to enforce the same, the court should sustain the majority of the arbitrators, though the third arbitrator could not attend final meeting after notice." There was no agreement in that case that the award could be returned by a majority of the arbitrators. Where an agreement for arbitration by three arbitrators provided for an award by two, the fact that one refused to sign the award or to participate in the ascertainment of damages, did not invalidate it. *Toledo* v. *Zenith Transportation Co.*, 184 Fed. 391. The article of submission in the instant case provided for an award of two arbitrators. The court said in the *Toledo* case: " 'If,' * * * 'either by obstinacy, or at the desire of the defendant, or being hindered by business, [one] arbitrator absented himself from such meetings, having had due notice thereof, we are of the opinion that the award is good.' " This same doctrine was settled in England in an early day. *Bulson* v. *Lohnes*, 29 N. Y. 293; 2 Am. & Eng. Ency. Law (1st Ed.) 645. It is followed in this State. *Stringer* v. *Toy*, 33 W. Va. 86. There is no allegation in the bill that the absent arbitrator had not notice. In fact, the bill alleges that he was present at the afternoon session of the arbitrators, and that he was present the next morning at their sessions. Hence, it may reasonably be inferred that he had actual notice of the evening session. As we view it, in the light of all of the authorities, the absence of this arbitrator at this particular evening conference would not constitute such misconduct as to vitiate the award.

The final act of misconduct, and the one most strongly stressed by the appellant, is the failure of the arbitrators to make a personal inspection of the premises. The arbitration agreement provides: "Said arbitrators shall make such ex-

amination of the premises *as they may deem necessary and proper.*" In another paragraph it is provided that "When they have made such examination *as they may desire*", etc. These are the only references to this matter in the agreement. The record discloses that both parties agreed to the conclusion of the submission of testimony on the adjournment of March 3rd. In a casual reference to such examination during the taking of the testimony it was stated by counsel for appellee: "If they do go I suppose both sides will be notified." To which one of counsel for appellant replied: "All right." It nowhere appears that either party expressly requested that the arbitrators go upon the premises. The arbitrators in writing to counsel for each side, requesting briefs, made known that they would meet on March 23rd for no other purpose than to consider their award. The evidence taken disclosed the fact that a large portion of the mine and almost all of the areas where coal was alleged to have been lost was in such condition on account of the roof having fallen in and around said areas that it was impossible to penetrate them. Therefore an examination of the mines by the arbitrators would have been confined to only a portion of the areas in controversy. Had counsel expressly requested such examination we are not prepared to say that a refusal to make it would not have been erroneous. In such case it might have amounted to a denial of the arbitrators to receive competent evidence, for the general rule is that if arbitrators refuse to hear evidence pertinent and material to the controversy, the error may be cause for vacating the award. Morse, Arb. & Award, 143; 3 Cyc. 748. A like result would follow where the agreement of arbitration expressly provided that such examination should be made. The authorities relied upon to sustain misconduct all involve cases where such provision is in the articles of submission, or where requests for such examination were made. In the absence of either situation we agree with Erle, C. J. who said: "I know no law which makes it imperative on the master or any other arbitrator to go and look at the premises. It is entirely a matter for his discretion." *Munday v. Buck*, 9 C. B. (N. S.) 557. Here a reasonable construc-

tion of the provisions of the agreement of arbitration relating to such examination makes such examination entirely discretionary with arbitrators.

There is no allegation of actual fraud upon the part of the arbitrators, nor is there any proof that shows any fraud. On its face the award is plainly within the four corners of the agreement. I fully concur with the finding of the learned circuit judge in this case. It seems to me that when three practical, skilled, and honest minded coal mining experts join in an award of this character, it should not be disturbed, except for the most cogent reasons.

*Affirmed.*