CLINTON WATER ASSOCIATION

*v.*

FARMERS CONSTRUCTION COMPANY

(No. 13979)

Decided May 15, 1979.

Board of Assessment Review, 70 Misc. 2d 822, 335 N.Y.S.2d 114 (Sup. Ct. 1972).

*James C. West, Jr., Jones, Williams, West & Jones* for appellant.

*Roderick A. Devison* for appellee.

MILLER, JUSTICE:

Farmers Construction Company [hereinafter Farmers] urges that its motion to dismiss should have been granted in a declaratory judgment action brought by the Clinton Water Association [hereinafter Clinton] against Farmers. The declaratory judgment action sought to settle the question of whether Clinton was entitled to liquidated damages because of Farmers' delay in completing a construction contract which contained a penalty clause for late performance.

Farmers moved to dismiss the complaint, asserting the suit was foreclosed because the same issue had been previously submitted to arbitration by the parties pursuant to the arbitration clause in the construction contract, and a majority of the three arbitrators had found Clinton not entitled to liquidated damages.

The trial court overruled Farmers' motion to dismiss and proceeded to hear the case *de novo*. The court concluded that the arbitrators had reached an incorrect decision and by an order of March 8, 1976, awarded damages against Farmers based on the penalty clause. On appeal, Farmers urges as the primary ground for reversal that the court erred in overruling its motion to dismiss. Clinton's principal argument is that the arbitration award was not enforceable because it was not unanimous.

It has long been the rule in this State that where parties have undertaken arbitration, their award is binding and may only be attacked in the courts on the basis of fraud or on those grounds set out in W. Va. Code, 55-10-4.[1] These principles are more fully set out in Syllabus Points 1 and 2 of *Boomer Coal & Coke Co. v. Osenton,* 101 W. Va. 683, 133 S.E. 381 (1926):

> "Where the matters in controversy in an action at law are submitted by the parties to arbitration, under the provisions of the statute, and all parties thereto are afforded an opportunity to be heard and present all their evidence to the arbitration tribunal, the court will not thereafter, on an application to set aside the award made therein, review the evidence submitted for the purpose of determining the correctness of said award, in the absence of corruption or partiality in the arbitrators, or fraud practiced by one of the parties to the arbitration."

> "In such case, where the strict rules of legal procedure are waived under the terms of the arbitration, the award will not be set aside for a mistake of law, unless it is so glaring as to shock the conscience and warrant the conclusion that the arbitrators were biased, prejudiced, or influenced by some ulterior motive."

As we stated in our first decision in the case of *Board of Education v. W. Harley Miller, Inc.,* _____ W. Va. _____, 221 S.E.2d 882 (1975), our arbitration statute supplements the common law rules on arbitration. We conceive

---

[1] W. Va. Code, 55-10-4:

"No such award shall be set aside, except for errors apparent on its face, unless it appears to have been procured by corruption or other undue means, or by mistake, or that there was partiality or misbehavior in the arbitrators, or any of them, or that the arbitrators so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made. But this section shall not be construed to take away the power of courts of equity over awards."

that the grounds for attack on an arbitration award, as set out in W. Va. Code, 55-10-4, essentially parallel the same grounds that existed at common law. *Brodhead-Garrett Co. v. Davis Lumber Co.*, 97 W. Va. 165, 124 S.E. 600 (1924); *Mathews v. Miller*, 25 W. Va. 817 (1885); *Wheeling Gas Co. v. City of Wheeling*, 5 W. Va. 448 (1872).

The essential point as expressed in our second *W. Harley Miller, Inc.* case, is that once an arbitration award has been rendered, it is not easily impeached. *Board of Education v. W. Harley Miller, Inc.*, ____ W. Va. ____, 236 S.E.2d 439 (1977). The reasons for its virtual impregnability have been expressed in *Boomer Coal & Coke Co.*, *supra:*

> "An arbitration, while it partakes of the nature of a *quasi* judicial proceeding, it is not such a proceeding in a technical sense. It is a domestic tribunal as distinguished from a regular organized court. The very existence of the tribunal depends upon the voluntary actions of the disputants. They select their own judges. Its object and aim is to arrive at a just determination of the matters in dispute, and finally dispose of the same in a speedy and inexpensive way. The arbitrators are usually laymen, inexperienced in the technical rules of law, selected because of their intelligence and integrity, and with the belief that they will do substantial justice between the parties. To require an arbitrator to follow the fixed rules of law in arriving at his award would operate to defeat the object of the proceeding. The courts of this country have adhered with great steadiness to the general rule that awards will not be set aside for errors of law or fact on the part of the arbitrators. 2 R. C. L. 386. ..." [101 W. Va. at 693, 133 S.E. at 385]

*Boomer Coal & Coke Co.* dealt with a procedural attack on an arbitration award in which the losing party attempted to assail the award in the circuit court, contending the arbitrators were guilty of certain acts of misconduct, were not impartial and had made mistakes

of law. The trial court sustained a demurrer to the plaintiff's bill in equity on the basis that there was no allegation of fraud on the part of the arbitrators. This Court affirmed the dismissal.

While the second case of *W. Harley Miller, Inc.* involved the enforcement of the award in the circuit court by the winning party, the same substantive rule is applicable here. There, we held in the second syllabus point that in the absence of the assertion of the defense of fraud, the plaintiff was entitled to summary judgment.[2]

> "Where, in the absence of fraud, an arbitration award has been made by arbitrators pursuant to a bargained-for arbitration provision, the award is enforceable by a motion for summary judgment upon a complaint setting forth the contract, the arbitration provision, and the award of the arbitrators."

Here, the trial court should have granted the defendant's motion to dismiss, since the plaintiff's complaint contained no allegation of fraud on the part of the arbitrators. In fact, the entire hearing proceeded on the theory that the arbitrators made certain mistakes as to the facts and law. As we have already seen, however, under our cases these grounds are not sufficient to overturn an arbitration award. Our position is not unique. *See* 5 Am. Jur. 2d *Arbitration and Award* § 167; 6 C.J.S. *Arbitration* § 150.

The basis on which the trial court overruled Farmers' motion to dismiss is not clear from the record. Clinton urges here that the award was void because it was not unanimous. We are cited *Stewart v. County Court,* 99 W. Va. 640, 130 S.E. 271 (1925), and *Wheeling Gas Co. v. City of Wheeling,* 5 W. Va. 448 (1872), for the proposition that at common law an arbitration award must be unan-

---

[2]We also recognized that the arbitration award could be attacked if it could be shown that the arbitration provision was unconscionable or that it was part of a contract of adhesion. No such circumstances are urged in this case.

imous, but our common law rule has never been that absolute. A more accurate statement of the rule is found in the third syllabus of *Stewart, supra:*

> "In such case, in the absence of an express or implied provision in the submission that a majority award may be made, all three of the arbitrators must join in the award to make it valid."

*See* 6 C.J.S. *Arbitration* § 90; Annot., 83 A.L.R.3d 996 (1978).

Moreover, in construing the language of arbitration clauses, this Court has been rather liberal in interpreting that language to mean that a majority vote was intended. This is perhaps because of our policy to foster and encourage arbitration agreements, as emphasized in both of the *W. Harley Miller, Inc.* decisions and in *Boomer Coal & Coke Co., supra.*

Much of the absolute language as to the necessity of a unanimous award found in *Wheeling Gas Co. v. City of Wheeling, supra,* is qualified by this Court's later opinion in the same case, *Gas Company v. Wheeling,* 8 W. Va. 320 (1875), where the Court upheld a divided arbitration award.[3]

In *Stiringer v. Toy,* 33 W. Va. 86, 10 S.E. 26 (1889), the arbitration clause provided that the two parties would each select an arbitrator and that the two so chosen would appoint a third person, designated as an umpire. The Court concluded that a majority award was valid, since the third individual's role was "to decide between the arbitrators in case they disagree." 53 W. Va. at 88, 10 S.E. at 26. There was no express language in the arbi-

---

[3]Admittedly, it is difficult to determine whether, in the second *Gas Company v. Wheeling* case, the Court found that the public nature of the arbitration brought it within the public interest exception to the common law rule of unanimity, *see, e.g., City of Omaha v. Omaha Water Co.,* 218 U.S. 180, 30 S.Ct. 615, 54 L. Ed. 991 (1910), or whether it found that the parties had impliedly agreed to a majority award.

tration clause assigning this role to the umpire, but the Court inferred it.

*Stiringer's* rationale can hardly be thought to turn on the mere term "umpire," since the person so designated was cloaked with the same authority as the arbitrators, although *Stewart, supra,* suggests that he occupied some special position. From a practical standpoint, it is apparent that where three arbitrators are selected, one by each of the parties and the third by the consent of the two selected, the underlying intention is two-fold.

First, the parties recognize that a board of arbitrators composed of only two persons, one selected by each of the parties, may not be able to agree on an award, in which case there can be no award because of a tie vote. Second, the presence of a third party jointly selected incorporates a degree of impartiality, and at the same time provides a means of breaking the deadlock caused by a tie vote.

Here, the parties not only provided for a third arbitrator, but expressly anticipated the eventuality that one of the parties might defeat arbitration by refusing to appoint an arbitrator.[4] Therefore, they were willing to give the arbitrator, who had been timely selected, the full power to decide the controversy. In essence, they elected to have a single arbitrator selected by one party

---

[4]"All questions or controversies which may arise between the Contractor and the Owner, under or in reference to this Contract, should be arbitrated, to the fullest extent possible at a meeting between the Contractor, the Owner, the Engineer, and a representative of the FHA including the staff engineer if available. The decisions reached at such meetings shall be carefully documented and become final and binding on all parties concerned. Should the Owner and Contractor be unable to agree, a board of three arbitrators shall be chosen. One shall be chosen by the Contractor, one shall be chosen by the Owner, and the third shall be selected through mutual agreement by the first two. Should either party neglect or fail to select an arbitrator within ten days, the arbitrator selected by the other party shall have full power to decide the dispute in the same manner as though a board of three arbitrators had been selected."

decide the matter, where the other party declined to timely nominate an arbitrator.

Our cases, by focusing on the intent of the parties either express or implied as discerned from the arbitration language, remove us from the more restrictive common law rule which requires a unanimous arbitration award unless the arbitration agreement expressly provides to the contrary. Yet, it cannot be doubted that a rule based on the express or implied intent of the parties affords a certain laxity of interpretation that can culminate in the rather paradoxical result found in the two *Wheeling Gas Co.* cases, where the same arbitration clause was interpreted differently by the Court.

The New Jersey Supreme Court has recently made a thorough and penetrating analysis of the origins of the common law rule in *La Stella v. Garcia Estates, Inc.*, 66 N.J. 297, 331 A.2d 1 (1975):

> "The common law unanimity rule was in all likelihood a subordinate incident of the judicial hostility to arbitrations; it was generally adopted by the various state courts without discussion of its origin or validity though at least one state rejected it with the following brief comment: 'Whatever may be the rule elsewhere, the rule in this state is that an award by a majority of arbitrators is valid, whether the matter submitted be private or under a rule of court (Lockart v. Kidd, 2 Mills, Const. 217; Leatherwood v. Woodroof, 2 Brev. 380), or by contract of the parties (Black v. Pearson, 1 McCord, 137), or whether the matter be public, as in this case (Abbeville Co. v. McMillan, 52 S.C. 72, 29 S.E. 540).' Greenville County v. Spartanburg County, 62 S.C. 105, 124, 40 S.E. 147, 153–154 (1901)." [66 N.J. at 300–301, 331 A.2d at 3]

Since we have never totally embraced the common law rule and in view of the fact that it runs counter to this Court's established policy to encourage private arbitration, we believe that the position taken by the New Jersey Court in *La Stella* is more compatible with our total arbitration law. We, therefore, hold that a majority

award is sufficient in an arbitration proceeding unless the agreement directing arbitration expressly requires that the award be unanimous. While the arbitration clause in the present case could well have been found to have implied that the award need not be unanimous, we apply our new rule that in the absence of any express language requiring the award to be unanimous, a majority award is sufficient.

We have previously held that the trial court erred in not granting Farmers' motion to dismiss, since Clinton in its complaint did not attack the validity of the arbitration award on the basis of fraud or any ground which falls within the statutory provisions of W. Va. Code, 55-10-4. Consequently, the judgment of the Circuit Court of Monongalia County must be reversed, as the motion to dismiss should have been granted on the majority award of the arbitrators which found Farmers not liable for any penalties.

*Reversed and remanded.*