304 S.E.2d 353

**Thomas BARBER**

v.

**UNION CARBIDE CORPORATION, Union Carbide Metals Company Division.**

**No. 15511.**

Supreme Court of Appeals of West Virginia.

June 22, 1983.

Thomas P. Maroney, Charleston, for appellant.

Jackson, Kelly, Holt & O'Farrell, Gary W. Hart and Stephen R. Crislip, Charleston, for appellee.

NEELY, Justice:

We granted this appeal to clarify our arbitration law under principles developed in *Board of Education v. Miller,* 160 W.Va. 473, 236 S.E.2d 439 (1977). The appellant, Thomas Barber, was an employee of the appellee, Union Carbide Corporation, when his labor union, the Oil, Chemical and Atomic Workers International (OCAW) obtained a pension and insurance agreement from the appellee employer.

In 1974 Mr. Barber filed a claim for total and permanent disability under the provisions of the plan, and his claim was denied. The contract that established the plan between the union and the employer included a mechanism to arbitrate disputes over the extent of alleged disabilities covered by the plan. In this regard the pension plan agreement provided as follows:

> If any dispute shall arise between the Company [Union Carbide] and any bargaining unit employee, as to whether such person is, or continues to be, totally and permanently disabled within the meaning of the Pension Plan, such dispute shall be resolved upon the prompt filing of a claim by the employee, as follows:
>
>> The employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by the Union [the OCAW]. If they disagree concerning whether the employee is totally and permanently disabled, the question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination by him of the employee and consultation with the other two physicians, shall be final and binding on the Company, the Union and the employee. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

Mr. Barber's claim was handled under the procedure established in the pension plan by the provision quoted above. The employer chose Dr. Leonard M. Eckman and the union chose Dr. W.L. Clairborne; these two physicians examined Mr. Barber, prepared their respective reports and, having disagreed about Mr. Barber's disability, chose Dr. Stafford G. Warren as the third physician to resolve the difference of opinion.

After examining Mr. Barber and consulting with Dr. Eckman and Dr. Clairborne, Dr. Warren found that Mr. Barber was not totally and permanently disabled within the

meaning of the pension plan. Dr. Warren's report stated:

"In summary, after extensive evaluation, I find no evidence of significant cardiac disease, no evidence of coronary insufficiency or obstructive coronary artery disease, and no evidence why this man should be disabled from either a cardiac or pulmonary standpoint ..."

Five years later, on 21 May 1979, Mr. Barber filed a civil action in the Circuit Court of Fayette County against his former employer, Union Carbide, alleging a breach of the contract that established the plan between the union and the employer. In his civil action Mr. Barber sought approximately Ten Thousand Dollars ($10,-000.00) in pension payments due to him by virtue of an alleged total and permanent disability incurred before he reached the age of 65. After the age of 65, he is eligible for his regular Union Carbide pension and that pension is not at issue in this appeal.

On 2 September 1980, Union Carbide moved for summary judgment in its favor on the grounds that the litigation had been submitted to binding arbitration pursuant to the terms of the written contract and that the award of the arbitrators was in favor of Union Carbide. The Circuit Court granted summary judgment and we affirm.

I

The appellant asserts here that paragraph 3 of the Pension Plan cited above does not create a binding arbitration agreement and, alternatively, even if it is a binding arbitration agreement, the decision of Dr. Warren is not enforceable under *Board of Education v. Miller, supra,* because the decision was procured by constructive fraud. We find merit in neither of these arguments.

In *Board of Education v. Miller, supra,* we restructured conflicting common law precedent in this State governing arbitration and established a comprehensive scheme to encourage binding arbitration by sophisticated, commercial parties. Our policy encouraging binding arbitration was developed further in *Clinton Water Association v. Farmer's Construction Company,* 163 W.Va. 85, 254 S.E.2d 692 (1979). Certainly the plain wording of the Pension Plan Contract established such a scheme of binding arbitration when it used the following language;

"The medical opinion of the third physician, after examination by him of the employee and consultation with the other two physicians, shall be final and binding on the company, the union and the employee."

This language is clear and unambiguous in its intention to create an expeditious, effective, and just mechanism for resolving disputes over disability.

II

The appellant claims that he was not present when the doctors met to discuss his case, and that he was not permitted to present evidence or cross-examine the doctors. Therefore, he claims, the arbitrator's decision should be set aside on the basis of "constructive fraud." The appellant is inviting us to review the merits of the arbitrator's decision and, although many courts have been willing to indulge such entreaties,[1] we decline to do so.

Once arbitration is established as the bargained-for remedial procedure for resolving grievances of sophisticated commercial parties, it must be an exclusive remedy, enforceable through summary judgment. Otherwise, arbitration is less than useless—where it is a mere shadow-

---

1. Examples of the grounds courts have found to overcome the powerful presumption in favor of an arbitration award's validity, and interfere with the arbitrator's decision include: appearance of partiality (*Kornit v. Plainview-Old Bethpage Central School District,* 70 A.D.2d 657, 417 N.Y.S.2d 15, *affirmed,* 49 N.Y.2d 482, 427 N.Y.S.2d 786, 404 N.E.2d 1327 (1980)), actual bias (*Barcone Associates Inc. v. Tri-County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214 (1981)), corruption (*Mellon v. Travelers Insurance Co.,* 267 Pa. Super. 191, 406 A.2d 759 (1979)), and violation of public policy (*Joint School District No. 10, City of Jefferson v. Jefferson Education Association,* 78 Wis.2d 94, 253 N.W.2d 536 (1977)).

play prefiguring eventual court litigation it is a positive curse.

In order for arbitration to be effective, it must achieve three goals: (1) it must be quick; (2) it must be cheap; and (3) it must be more flexible than the ordinary rules of law. If arbitration awards can be challenged in court on any theory other than actual fraud or failure to follow the procedures that were bargained for in the arbitration clause, then the goals of speed, parsimony, and flexibility are all entirely defeated; the process then becomes more expensive and less flexible than it would have been if the parties went to court in the first instance.

In this regard it must be understood that the court litigation process itself is not without flaws. Parties become bankrupt because funds are frozen in place while cases are prisoners of the languid peristalsis of court procedure. Where one party has the power to bring a project to a perhaps disastrous halt, that party also has the power to coerce the other party into an unjust settlement. Thus the fact that the party in the right will prevail in the long-run does not obviate the positive advantages of litigation *per se* to the party in the wrong in the short-run. For, as the great Keynes once said, "in the long-run, we are all dead." Thus, if courts are willing to second-guess the arbitration process, arbitration is doubly jeopardized: the very process of litigation defeats the goals of speed and parsimony in resolution of the dispute, and careful court scrutiny of the decision itself may defeat the goal of flexibility. For these reasons, courts of this State will not review an arbitration award rendered pursuant to the terms of a commercial contract except for actual fraud.

Where other courts have chosen to supervise the justice of arbitration awards by allowing "constructive fraud" and similar challenges, we have chosen to limit the availability of arbitration to knowledgeable commercial parties. *Board of Education v. Miller, supra.* Furthermore, we are willing to inquire into such matters as whether the agreement to arbitrate was a contract of adhesion and whether arbitration is proper under the totality of the commercial circumstances. All of these inquiries may be made by the judge in the hearing on the motion for summary judgment, since they appear from the four corners of the contract or from the nature of the parties themselves. Once it appears, however, that the litigants are parties to a proper commercial contract and knowingly bargained for an arbitration clause, we will not inquire further into the correctness of the arbitrator's result in the absence of actual fraud.

We mentioned fraud specifically in syl. pt. 2 of *Board of Education v. Miller, supra,* which provides:

"Where, in the absence of fraud, an arbitration award has been made by arbitrators pursuant to a bargained-for arbitration provision, the award is enforceable by a motion for summary judgment upon a complaint setting forth the contract, the arbitration provision, and the award of the arbitrators."

We take this opportunity today to explain that the term "fraud" in syl. pt. 2 of *Board of Education v. Miller,* means fraud, and not constructive fraud, quasi-fraud or anything else fraud-like. This should come as no surprise to anyone familiar with the established law of other jurisdictions.[2] In

---

**2.** As one court has pointed out, "constructive fraud is not fraud at all but is descriptive of conduct which may in the eyes of the law give rise to certain consequences ensuing upon actual fraud; perhaps the law would be better without the term." *Bedrock Foundations Inc., v. George H. Brewster & Son Inc.,* 31 N.J. 124, 136, 155 A.2d 536, 542 (1959), cited in *Foont-Freedenfeld Corp. v. Electro-Protective Corp.,* 126 N.J.Super. 254, 256–7, 314 A.2d 69, 70 (1973). With respect to the effect of constructive fraud on an arbitrator's decision, a separate line of cases

concludes that "[a]n argument that the arbitrators ... reached an award so unjust that it constitutes constructive fraud, will not be heeded." *Mellon v. Travelers Ins. Co., supra,* 406 A.2d, at 761, citing *Allstate Ins. Co. v. Fioravanti,* 451 Pa. 108, 115, 299 A.2d 585, 589 (1973).

The distinction between actual and constructive fraud has been summarized in this jurisdiction by our federal courts:

Fraud ... may consist of either "actual fraud" or "constructive fraud." Actual fraud, as defined by the West Virginia courts consists of

this context, we define fraud as willful, deliberate, malicious corruption emanating from an intentional desire to defeat a known, legitimate claim.

Furthermore, even were appellant's legal theories convincing, we would still not be able to provide him with the remedy he seeks. Where procedures established in an otherwise enforceable arbitration clause in a contract are not followed, the only remedy that a court can give in a civil action is to set aside the award of the arbitrator and require arbitration according to the correct procedure.

In the case before us the contracting parties were both highly sophisticated, commercial parties. Although the appellant was an individual worker, he was part of a larger "commercial" group, namely a union, and the union entered into the contract in question as part of an overall collective bargaining agreement with a commercial purpose. Certainly the contract was not thrust upon the union because it was unwary; the contract was not one of adhesion; and, the arbitration provision was bargained for by both parties for the eminently reasonable purpose of reducing litigation and achieving both quick and fair results. Therefore, the Circuit Court was correct under the principles of *Board of Education v. Miller, supra,* in awarding a summary judgment that validated the award of the arbitrators.

Accordingly for the reasons set forth above, the judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.

"deception, intentionally practiced, to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." Constructive fraud, on the other hand, has been defined as "a breach of legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence * * *. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." [Citations omitted]

*Steele v. Steele,* S.D.W.Va., 295 F.Supp. 1266, 1269 (1969).