438 S.E.2d 543

**Leroy M. RASHID and Richard C. Rashid, Plaintiffs Below, Appellants,**

v.

**SCHENCK CONSTRUCTION COMPANY, INC., and Schenck & Associates, Inc., a Kentucky corporation, Defendants Below, Appellees.**

**United States Fidelity & Guaranty Company, Intervenor.**

**No. 21300.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1993.

Decided April 23, 1993.

William S. Druckman, Preiser Law Firm, Charleston, for appellants.

Gary D. Phillips, Greenbaum, Boone, Treitz, Maggiolo & Brown, Louisville, KY, for appellees.

James R. Watson, Steptoe & Johnson, Charleston, for intervenor.

BROTHERTON, Justice:

This case involves an appeal from the dismissal of a suggestion action in the Kanawha County Circuit Court, brought by the plaintiffs below, the Rashids, against United States Fidelity & Guaranty Company (USF & G). The case below concerned the default of a construction contract by Schenck Construction Company, Inc., on a project being developed by the Rashids, and USF & G's refusal as surety to pay off on the performance bond. The issue of the default on the construction contract between the Rashids and Schenck Construction Company, Inc., the contractor, went before the American Arbitration Association on June 3, 1991. The arbitrators found in favor of the Rashids in the amount of $763,730.00. The Rashids then filed a civil action in the Circuit Court of Kanawha County to enforce the arbitration award. A judgment was entered by the Circuit Court of Kanawha County in the amount of $775,185.99, plus 10% interest from that date. Thereafter, the Rashids filed a suggestion against USF & G to enforce the judgment, on the theory that USF & G's issuance of a performance bond to the Rashids for the construction of a grocery store by Schenck Construction rendered USF & G liable to the judgment debtors, Schenck Construction Co. and Schenck & Associates, by default. On June 24, 1992, Judge Canady dismissed the suggestion.

The facts are as follows: On February 8, 1989, the Rashids entered into a construction contract with Schenck Construction Company for the design and construction of a grocery store in St. Albans, West Virginia. The contract specified a guaranteed maximum price of $911,706.00 and a completion date in mid-September, 1989. Schenck was to furnish all the architectural work, labor, and materials necessary to build and complete the store. The architectural services were included in the guaranteed maximum price and were supplied under the contract by Schenck & Associates. The contract was bonded by USF & G in a performance bond dated February 8, 1989, to the full maximum contract price of $911,706.00. The contract was incorporated, by reference, into the bond. With USF & G as underwriter, the Rashids paid for (1) a Labor and Material Payment Bond in the amount of $911,706.00, and (2) a Performance Bond in the amount of $911,706.00.

The performance bond provided that in the event of Schenck's default under the contract, USF & G was obligated to remedy the default or take other steps to complete the contract. It also stated, "[t]he surety hereby waives notice of any alteration or extension of time by the owner." The bond also required that USF & G be jointly and severally bound with Schenck to the Rashids against losses resulting from Schenck's defaulting on the contract. The obligation could be fulfilled in two ways: (1) The surety could enter the construction site and complete the con-

struction in accordance with the original terms and condition of the contract, or (2) the surety could obtain bids for completion of the contract and, upon determination of the lowest bid, arrange for a contract between the bidder and the Rashids. The bond also stated that any suits under the bond be brought within two years. The Rashid–Schenck contract provided a two-step process for dispute resolution: (1) The claim/dispute was first sent to an architect, who could notify the surety of claims or the possibility of contractor's default. (2) Claims not resolved by an architect were to be settled by binding arbitration. Those with a substantial interest in a common question of law or fact in the proceeding should be a party to the arbitration, with the agreement of the owner and the contractor.[1]

Work on the project began in March, 1989. It ceased in November, 1989, when Schenck abandoned the construction site and refused to perform any additional work. Prior to that time, several underground gasoline storage tanks were discovered during excavation. By written change order, Schenck agreed with the Rashids to arrange and oversee the environmental remediation work involving the gasoline storage tanks. Schenck then contracted with two environmental remediation companies, ERM–Midwest, Inc., and Landmark Corp., to perform the work. The cleanup proceeded for some time, until August of 1989, when it became obvious that various subcontractors had not been paid for work performed.[2] Schenck Construction terminated the contract by letter dated January 11, 1990, complaining that the Rashids had failed to make progress payments and that they refused to adequately address the environmental problems of the storage tanks at the site. On January 30, 1990, the Rashids notified USF & G of Schenck's default and demanded compliance with the performance bond. In accordance with the contract, the Rashids began binding arbitration against Schenck on February 28, 1990, claiming that Schenck had defaulted on the contract.

The arbitration took place on June 3, 4, and 5, 1991. During arbitration, Schenck offered two defenses for its refusal to complete the project. First, it claimed that residue from underground storage tanks had been discovered on the site, which prevented the project from being completed. Second, Schenck stated that the Rashids' failure to make payment under the November 30, 1989, application and certificate for payment represented a breach of contract that justified work stoppage.

The Rashids countered that the storage tanks discovered on the site would not pre-

---

1. The arbitration agreement provides, in pertinent part:

    4.5  ARBITRATION
    4.5.1  Controversies and Claims subject to Arbitration. Any controversy or claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

    *     *     *     *     *     *

    4.5.5  Limitation of Consolidation or Joinder. No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.

    *     *     *     *     *     *

    4.5.7  Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

2. In addition to this action and the federal suit, the Rashids also have filed a lawsuit (Civil Action No. 90–C–2519) in Kanawha County Circuit Court against the City of St. Albans and the St. Albans Urban Renewal Authority (SAURA), who then filed a third party action against Amoco for the cost of reclaiming the site. The City of St. Albans and the SAURA also filed a third party action against One Valley Bank as trustee of the property owner who leased the land to Amoco.

vent completion of the project. They claimed that the November 30, 1989, certificate for payment was invalid because it was not certified by the project architect as required by contract. They also argued that they had already made payments sufficient to cover the November 30, 1989, application and certificate for payment, because Schenck had improperly advanced on its prior payment request by filing materially false certifications that work not performed had been performed, and that subcontractors who had gone unpaid had been fully paid. Thus, the Rashids claim that the reasons given by Schenck for extension of its default was nothing but a fiction designed to disguise Schenck's true reasons for abandonment of the project. The Rashids claim that by late 1989, Schenck found itself in a precarious financial condition as a result of problems with several of its construction projects, and Schenck engaged in overbilling, advancement, misrepresentation, and nonpayment of subcontractors on the Rashid project in an attempt to keep its business afloat. Thus, the Rashids state that Schenck ultimately became unable to complete the project because of their financial problems.

USF & G was put on notice of the default on January 30, 1990. From that point on, the Rashids claim that USF & G did nothing but attempt to obstruct their claim against Schenck by failing to conduct a proper and timely investigation of the Rashids' claim under USF & G's performance bond.[3] On February 28, 1990, the Rashids initiated arbitration proceedings before the American Arbitration Association, as provided in the contract. Schenck & Associates participated in the arbitration with the Rashids. USF & G was not a party, although it paid for Schenck's defense due to the fact that Schenck was financially unable to do so.

On February 8, 1991, while the arbitration was still pending, the Rashids brought an action against USF & G in the United States District Court for the Southern District of West Virginia for breach of contract, fraud, bad faith, and violation of the West Virginia

Unfair Trade Practices Act. (Case No. 2:91–0141.) On April 22, 1991, USF & G filed a motion for a stay of all proceedings, pending the decision of the American Arbitration Association. On December 9, 1991, the court ordered that the breach of contract, bad faith, and unfair practices claims be stayed.

On June 15, 1991, the arbitrators found for the Rashids in the amount of $763,730.00. The Rashids filed a civil action in the Circuit Court of Kanawha County against Schenck to enforce the arbitration award. Schenck did not appear, and on August 8, 1991, judgment was entered in favor of the Rashids in the amount of $775,185.99. USF & G acknowledges that Schenck is incapable of making payment on this judgment. Thereafter, on August 27, 1991, the Rashids filed a suggestion and writ of execution against USF & G and Schenck with the Kanawha County Circuit Court, pursuant to W.Va. Code § 38–5–10 (1985). In their motion, the Rashids argued that USF & G was liable for the Kanawha County Circuit Court judgment against Schenck based upon the performance bond, which jointly and severally binds USF & G and Schenck with respect to the contract. USF & G denied liability, swearing it owed no sums to Schenck, the judgment debtor, and that the federal court action filed by the Rashids would deal with this issue.

On June 24, 1992, the suggestion was dismissed by the Circuit Court of Kanawha County. Thus, on July 2, 1992, the Rashids filed this appeal, arguing that USF & G was bound by the arbitration judgment against Schenck.

■ By memorandum order of September 28, 1992, the United States District Court for the Southern District of West Virginia ordered that collateral estoppel effect be given to the arbitration award. The district court concluded that the principles of collateral estoppel would preclude USF & G from relitigating the issues decided in the arbitration. *Rashid v. United States Fidelity & Guaranty Co.*, No. 2:91–0141, Slip Op. at 36–37 (S.D.W.Va. Sept. 28, 1992).

---

**3.** Ultimately, USF & G honored the labor and material payment bond, although it has not hon- ored the performance bond.

■ We agree. In *Turner v. Stewart*, 51 W.Va. 493, 41 S.E. 924 (1902), the Court noted briefly that an arbitration award against a principal is not enforceable against a surety who did not agree to arbitrate the dispute. *Id.* at 497, 41 S.E. at 928. That case, however, is easily distinguishable from the situation in this case. In 1902, arbitration was less common and not as favored a method of dispute resolution as it is today. A body of West Virginia case law has evolved over the years that mandates arbitration awards be recognized as binding and final as to the matters presented. "It has long been the rule in this State that where parties have undertaken arbitration, their award is binding and may only be attacked in the courts on the basis of fraud or on those grounds set out in W.Va.Code, 55–10–4." *Clinton Water Association v. Farmers Construction Co.*, 163 W.Va. 85, 254 S.E.2d 692 (1979). In *Barber v. Union Carbide Corp.*, 172 W.Va. 199, 304 S.E.2d 353 (1983), the Court stated that if a contract calls for arbitration, then arbitration is all the parties are entitled to receive.

When a commercial contract sets forth a particular method for arriving at a decision by an arbitrator, the parties are entitled only to the procedure for which they bargained and courts will not impose upon arbitrators concepts of "due process" developed in the courts in the face of explicit contractual provisions that provide other less time consuming and less expensive methods of dispute resolution.

*Id.* at syl. pt. 4. *See also Jackson Enterprises, Ltd. v. Procious Public Service District*, 178 W.Va. 574, 363 S.E.2d 460 (1987); *Boomer Coal & Coke Co. v. Osenton*, 101 W.Va. 683, 133 S.E. 381 (1926).

We concur with the federal district court's finding that USF & G agreed to arbitrate all aspects of disputes related to the contract and bond. Moreover, the Federal Arbitration Act now controls this situation. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the United States Supreme Court found that the Federal Arbitration Act evidenced the federal policy which favored arbitration agreements, "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 24, 103 S.Ct. at 941. The Fourth Circuit has ruled that the Federal Arbitration Act preempts state law where a contract which deals with a commercial transaction contains a written provision that provides disputes will be settled by arbitration. *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir.1985).

■ Under the Federal Arbitration Act and federal case law, an arbitration agreement can be incorporated into a subcontract by reference in a general contract. *Id.*[4] Likewise, an agreement to arbitrate, where it is part of a general contract, can be incorporated into a bond by reference to the general contract. In *Transamerica Premier Insurance Co. v. Collins & Co.*, 735 F.Supp. 1050 (N.D.Ga.1990), the federal district court held that a surety could be forced to arbitrate a dispute where the performance bond incorporated, by reference, an arbitration clause found in the subcontract in question. *Id.* at 1051. This method of incorporation promotes arbitration as a favored method of dispute resolution.

In the case now before us, the contract between Schenck and the Rashids contains such an arbitration agreement, incorporated by reference into the bond. Consequently, we concur with the federal district court that USF & G agreed to arbitrate and thus, the arbitration award is final and binding, and should be given collateral estoppel effect.

■ We next address the propriety of a third party using a suggestion action to collect a judgment from a surety on a performance bond. The term surety is defined in W.Va.Code § 33–1–10(f) (1992), which provides:

(f) Surety—Surety insurance includes:

\*    \*    \*    \*    \*    \*

(2) Insurance guaranteeing the performance of contracts, other than insurance policies, and guaranteeing and executing

---

**4.** *See also, United States Fidelity & Guaranty Co. v. West Point Construction Co.*, 837 F.2d 1507 (11th Cir.1988); *Hoffman v. Fidelity & Deposit Co.*, 734 F.Supp. 192 (D.N.J.1990).

bonds, undertakings, and contracts of suretyship: Provided, That surety insurance does not include the guaranteeing and executing of bonds by professional bondsmen in criminal cases, or by individuals not in the business of becoming a surety for compensation upon bonds; ....

In *State ex rel. Copley v. Carey,* 141 W.Va. 540, 91 S.E.2d 461 (1956), this Court explained the difference between contracts of surety and contracts of indemnity:

There is a vital distinction between a contract of suretyship and a contract of indemnity. In a contract of suretyship the obligation of the principal and his surety is original, primary and direct and the surety is liable for the debt, default or miscarriage of his principal. A contract of indemnity is likewise an original undertaking and creates a primary obligation, but the promise of the indemnitor, in a contract of indemnity against loss sustained by the person indemnified, is not to answer for the debt, default or miscarriage of another person but is to make good the loss which results to the person indemnified from such debt, default or miscarriage.

*Id.* at 549, 91 S.E.2d at 467 (citations omitted). In *Commercial Bank of Bluefield v. St. Paul Fire & Marine Ins. Co.,* 175 W.Va. 588, 336 S.E.2d 552 (1985), this Court affirmed the distinction found in *Copley* and pointed to the joint and several liability owed by the surety and the principal to the third party. *Id.* at 596, 336 S.E.2d at 560. Thus, the obligation of USF & G, as surety, is primary and direct.

West Virginia Code § 38–5–10 (1985) provides a suggestion action as a method for a judgment creditor to enforce an existing judgment:

Upon a suggestion by the judgment creditor that some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a law court, and which

debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be sued out of the office of the clerk of the circuit court of the county in which such person so indebted or liable, or so having such personal property, resides, or, if he be a nonresident of the State, in the county in which he may be found, upon an attested copy of such writ of fieri facias being filed with such clerk to be preserved by him in his office, requiring such person to answer such suggestion in writing and under oath.[5]

■ After a careful review of the statutory language, we find that a suggestion action may be a proper method to collect on a performance bond obligation, if the surety is liable or indebted to the judgment debtor. The judgment debtor, Schenck, owes a debt to the judgment creditor, Rashid. The third party, USF & G, is liable to the judgment debtor, Schenck, through the joint and several liability they share upon the performance bond. By agreeing to be jointly and severally liable with Schenck to the Rashids, USF & G has created a joint liability with Schenck that could be enforced in a court of law, as required by statute. Because of that joint liability, a suggestion action is a proper method for the Rashids to collect a judgment from a surety based upon a performance bond. *See also Newton v. Dailey,* 167 W.Va. 347, 350, 280 S.E.2d 91, 94 (1981). Consequently, because USF & G is jointly liable with Schenck on the bond, the Kanawha County Circuit Court erred in dismissing the suggestion action below.

However, USF & G complains that it has defenses that have not been presented to any trier of fact. In its order, the federal district court also concluded that USF & G had not arbitrated its defenses along with Schenck Construction and granted USF & G the opportunity to present evidence of those defenses which were not raised before the arbitration. "There being disagreement between the parties about the issues decided by the arbitrators (USF & G) will be given an op-

**5.** *See also Commercial Bank of Bluefield v. St. Paul Fire & Marine Ins. Co.,* 175 W.Va. 588, 336 S.E.2d 552 (1985); *Emmons–Hawkins Hardware*

*Co. v. Sizemore,* 106 W.Va. 259, 145 S.E. 438 (1928).

portunity to present their position on the matter." *Rashid v. United States Fidelity & Guaranty Co.*, No. 2:91–0141, Slip Op. at 35 (S.D.W.Va. Sept. 28, 1992). *See also United States Fidelity & Guaranty Co. v. Hathaway*, 183 W.Va. 165, 394 S.E.2d 764 (1990). Thus, the breach of contract and bad faith action still pending in district court will provide the surety a forum to present those defenses.[6]

Accordingly, we reverse the June 24, 1992, order and remand this case to the Circuit Court of Kanawha County with directions to reinstate the suggestion action.

Reversed and remanded.

**6.** Specifically, the district court found:

Having concluded in general that USF & G is bound by the arbitrator's award insofar as it determined Schenck Construction's liability to the Rashids under the referenced contract, practical problems remain. While federal law would doubtless have required USF & G to arbitrate its defenses along with those of Schenck Construction, that scenario did not occur and USF & G should not be bound by the award to the extent that it is based in whole or in part on unbonded obligations. The West Virginia statute and subsequent case law also dictate that USF & G be given the opportunity in this action to present defenses personal to it that were not raised in the arbitration proceeding. There being disagreement between the parties about the issues decided by the arbitrators, they will be given an opportunity to present their positions on the matter. *Id.* at 35 (footnote omitted).