**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1686**

AERO-SMITH, INCORPORATED, a Maryland corporation; JETLINK,
MRB, LLC, a Delaware limited liability company,

        Plaintiffs - Appellees,

    v.

CARDINAL AIR LIMITED LIABILITY COMPANY, a West Virginia
limited liability company,

        Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg.  John Preston Bailey,
District Judge.  (3:07-cv-00015-JPB)

Argued:  September 22, 2008       Decided:  December 3, 2008

Before WILLIAMS, Chief Judge, and TRAXLER and GREGORY, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Christopher L. Allen, ALLEN & BLACKFORD, P.C.,
Gaithersburg, Maryland, for Appellant.  William Richard McCune,
Jr., Martinsburg, West Virginia, for Appellees.  **ON BRIEF:**
Robert G. Blackford, ALLEN & BLACKFORD, P.C., Gaithersburg,
Maryland, for Appellant.  Alex A. Tsiatsos, LAW OFFICES OF WM.
RICHARD MCCUNE, JR., P.L.L.C., Martinsburg, West Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cardinal Air Limited Liability Company ("Cardinal") appeals from the district court's decision granting summary judgment to Aero-Smith, Inc. ("Aero-Smith") and JetLink, MRB, LLC ("JetLink"), which confirmed an arbitration award issued in favor of Aero-Smith. We affirm.

I.

The facts underlying this controversy are set forth at length in the award of the arbitrator below. By way of summary, Aero-Smith is a party to a fixed-base operation lease and operating agreement with the Eastern West Virginia Regional Airport Authority (the "Authority"). Aero-Smith, in turn, entered into a sublease agreement with Cardinal under which Cardinal was authorized to build a hangar on the subleased property to be used for aircraft storage and maintenance. Among other things, Cardinal was obligated under the agreement to comply with the standards promulgated by the Authority, maintain certain insurance for the operation, and maintain a full-time manager for operations at the airport. In the event of default, Cardinal was required "to remedy, or undertake to remedy, to [Aero-Smith's] reasonable satisfaction, such default for a period of thirty (30) days after receipt of notice from [Aero-Smith] to remedy the same." J.A. 63. If Cardinal failed to sufficiently remedy or undertake to remedy the default to Aero-Smith's

3

reasonable satisfaction, the sublease agreement authorized Aero-Smith to terminate the sublease and retake the premises, including the hangar. The agreement also provided for payment to Cardinal of the book value of any improvements to the property (i.e., the hangar), less a predetermined rate of depreciation, in the event of cancellation or termination "for any cause other than a breach of or default by" Cardinal. J.A. 64. Finally, the agreement provided for mandatory arbitration of "[a]ll claims or disputes arising out of or relating to th[e] [a]greement . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." J.A. 64. Such "award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." J.A. 64.

On November 3, 2005, Aero-Smith notified Cardinal that it was in default of the sublease agreement based upon Cardinal's failure to maintain a qualified full-time manager of operations and failure to meet the minimum standards of the Authority. On January 9, 2006, Aero-Smith filed a demand for arbitration asserting that Cardinal had not remedied the deficiencies to Aero-Smith's satisfaction and requesting that Cardinal be deemed in default and the sublease terminated.

4

On December 27, 2006, the matter proceeded to arbitration. The arbitrator found in favor of Aero-Smith, terminated the sublease, and ordered Cardinal to vacate the premises. Among other things, the arbitrator found that Cardinal was in breach of the agreement, had failed to take appropriate steps to remedy the breach and had, instead, "persisted in [its] unauthorized use of the [hangar] with the Authority and Aero-Smith at risk, and hid[den] [its] misconduct from the Authority." J.A. 116. The arbitrator further found that Cardinal, "rather than curing its breaches, [had] chose[n] to continue its default, and indeed to proceed with attempts to conceal its misconduct." J.A. 116. Nevertheless, the arbitrator also chose to award compensation to Cardinal in the amount of $288,891.30, payable by Aero-Smith and/or JetLink,[1] - an amount representing the book value of the hangar less depreciation in accordance with the compensation provision of the sublease agreement -- based upon the arbitrator's belief that "[t]ermination without some compensation is too severe a remedy . . . in view of all the circumstances." J.A. 117. The arbitrator subsequently issued a clarification of

---

[1] On February 3, 2006, Aero-Smith sold its assets to JetLink, including its rights under the sublease agreement. However, neither party sought to add JetLink as a party to the arbitration.

5

the earlier award, ordering Cardinal to vacate the premises by January 30, 2007.

On January 11, 2007, Aero-Smith and JetLink filed suit in West Virginia state court seeking enforcement of the arbitration award, as well as damages for wrongful occupation of the hangar, costs and fees. Cardinal removed the action to federal court on the basis of diversity of citizenship. The district court granted summary judgment in favor of Aero-Smith and JetLink, enforcing the arbitration award, ordering transfer of possession of the premises from Cardinal to JetLink, and ordering Aero-Smith and JetLink to tender the compensation award to Cardinal as calculated by the arbitrator. Cardinal appealed, and the district court granted the parties' joint motion to stay payment pending this appeal.

## II.

This Court reviews the district's court decision to grant summary judgment and confirm an arbitration award de novo. See Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC, 491 F.3d 171, 176 (4th Cir. 2007).

### A.

Cardinal's first assertion on appeal is that the arbitration award should be set aside under West Virginia law because the

6

sublease agreement, from its inception, fraudulently included a right by Aero-Smith to take possession of the hangar upon default by Cardinal and contained a compensation provision upon cancellation or termination that was unconscionably low. Specifically, Cardinal contends that during a September 1998 meeting between Aero-Smith and the Authority, a representative of the Authority made a statement reflecting an intent that Aero-Smith would not preserve a right to retake and repossess the hangar in the event of default by the sublessee. The subsequent inclusion of a "contrary" sublease provision granting this improvement to Aero-Smith upon default, Cardinal argues, constituted an act of "actual fraud" under West Virginia law sufficient to set aside the arbitration award. See Barber v. Union Carbide Corp., 304 S.E.2d 353, 357 (W. Va. 1983) (holding that, under West Virginia law, "an arbitration award rendered pursuant to the terms of a commercial contract" will not be reviewed "except for actual fraud"). Cardinal also contends that the provision requiring Aero-Smith to pay only book value less depreciation for the hangar in the event of a default is an unconscionable contract provision, evidenced by the fact that the appraised value exceeded $700,000 and that Cardinal had recently rejected offers by Aero-Smith and JetLink to purchase the rights to the hangar for in excess of $600,000. See Ashland

7

Oil, Inc. v. Donahue, 223 S.E.2d 433, 440 (W. Va. 1976) (noting that unconscionable contract provisions may be unenforceable); Barber, 304 S.E.2d at 357 (noting that the courts will also "inquire into such matters as whether the agreement to arbitrate was a contract of adhesion and whether the arbitration is proper under the totality of the commercial circumstances").

At the outset we note that Cardinal does not contend that there was partiality, corruption, or fraudulent behavior on the part of the arbitrator, which can serve as the basis for setting aside an arbitration award. Nor does it appear that Cardinal contests, in isolation, the validity of the arbitration provision contained within the sublease. Beyond this, however, Cardinal's claimed right to set aside the arbitration award on the basis of fraud and unconscionability is not always clearly articulated or consistent. Giving Cardinal the benefit of the doubt, however, we construe the argument to be two-fold: first, that the arbitration award was fraudulently procured by Aero-Smith by its use of the termination and compensation provisions in the arbitration proceeding and, second, that the termination and compensation provisions in the sublease agreement are

8

unenforceable under West Virginia law.[2]  Neither claim, however,

entitles Cardinal to relief from the arbitration award.

First, Cardinal's assertion that we must set aside the

arbitration award because Aero-Smith fraudulently procured it by

including the termination and compensation provisions and using

them in the arbitration proceeding years later to "steal" the

hangar from Cardinal Air is without merit.  The notes of the

September 1998 meeting between Aero-Smith and the Authority were

in the possession of Cardinal during the arbitration

proceedings, but Cardinal chose not to pursue this argument

---

[2] The parties have jointly argued that West Virginia law exclusively governs the claims on appeal, as they have been articulated by Cardinal.  To the extent Cardinal seeks to avoid enforcement of the arbitration award by asserting that the sublease agreement is unenforceable because Aero-Smith fraudulently entered into the agreement and because the agreement is unconscionable, we agree that West Virginia law would govern the enforceability of the contract.  With regard to the arbitration award itself, West Virginia statutory and case law does not materially differ, for purposes of this appeal, from the Federal Arbitration Act, which requires the enforcement of arbitration agreements "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C.A. § 2 (West 1999), and which allows the court to vacate any arbitration award that "was procured by corruption, fraud, or undue means," 9 U.S.C.A. § 10(a)(1) (West Supp 2008); see W. Va. Code § 55-10-4 (providing that "[n]o [arbitration] award shall be set aside, except for errors apparent on its face, unless it appears to have been procured by corruption or other undue means, or by mistake, or that there was partiality or misbehavior in the arbitrators, or any of them, or that the arbitrators so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made").

before the arbitrator. In any event, the statement made by the Authority representative during the meeting falls woefully short of establishing that Aero-Smith procured the arbitration award through fraudulent means or behavior. Cardinal was not present at the meeting and the meeting took place before the sublease agreement was drafted or executed by Cardinal and Aero-Smith, both of whom are sophisticated commercial parties. Thus, even if the sublease agreement between Cardinal and Aero-Smith contravened the statement made at the meeting by the Authority's representative, this does not render the termination or compensation provisions included by these sophisticated parties fraudulent or unconscionable. Furthermore, the arbitrator addressed and dismissed Cardinal's allegation that Aero-Smith was attempting to "steal" the hangar in the arbitration proceedings and found instead that "the testimony regarding the hangar sale offers and responses by the Cardinal principals, the sellers, reflects a pattern of good faith offers, on the one hand, and unreasonable responses, on the other." J.A. 117. Thus, Cardinal has clearly failed to demonstrate the requisite fraud on the arbitration proceedings necessary to set aside the arbitration award.

Second, Cardinal's claim that the sublease agreement is unenforceable under state law because the termination provision

was fraudulently included by Aero-Smith and because the compensation provision is unconscionable also fails. Again, both Aero-Smith and Cardinal are sophisticated commercial parties. Cardinal retained counsel to draft the sublease agreement and offered no evidence demonstrating a lack of meaningful choice. Furthermore, the compensation provision, which determines the value of Cardinal's improvement by book value of the hangar minus eight years of depreciation, does not render the agreement unconscionable. On the contrary, as applied by the arbitrator,[3] it effectually prevented total forfeiture of the hangar in the case of a breach by Cardinal.

## B.

Cardinal next contends that the arbitration award should be set aside because the arbitrator, in reaching the conclusion that Cardinal was in default, "'ignore[d] the plain language of the contract'" and reformed its terms in disregard of West Virginia law. Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 228 (4th Cir. 1991) (quoting United

---

[3] As noted earlier, the sublease agreement appears to only provide for such payment in the event of cancellation or termination "for any cause other than a breach of or default by" Cardinal. J.A. 64 (emphasis added). However, the arbitrator believed that termination without compensation was "too severe a remedy . . . in view of all the circumstances." J.A. 117.

11

Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

We are unpersuaded.

As noted above, the sublease agreement was "subject to termination by" Aero-Smith in the event of "default by [Cardinal] in the performance of any terms, covenants or conditions of th[e] [a]greement, and the failure of [Cardinal] to remedy, or undertake to remedy, to [Aero-Smith's] reasonable satisfaction, such default for a period of thirty (30) days after receipt of notice from [Aero-Smith] to remedy the same." J.A. 63. Cardinal argues the arbitrator altered this language to require that Cardinal <u>remedy</u> the default <u>within</u> thirty days, rather than to require only that Cardinal "undertake to remedy" the default "for" 30 days. Cardinal claims that it did "undertake to remedy" the default "for" thirty days because it had obtained a new manager within this time frame, even though it had not obtained approval.

On judicial review, "[a]n arbitrator's award is entitled to a special degree of deference." <u>Upshur</u>, 933 F.2d at 228. "'The arbitrator may not ignore the plain language of a contract,'" but the "'court should not reject an award on the ground that the arbitrator misread the contract.'" <u>Id.</u> at 228-29 (quoting <u>Misco</u>, 484 U.S. at 38); <u>see</u> <u>also</u> <u>Choice Hotels</u>, 491 F.3d at 177. The arbitrator's interpretation of the law is also accorded

12

deference. See Upshur, 933 F.2d at 229. "'As long as the arbitrator is even arguably construing or applying the contract,' a court may not vacate the arbitrator's judgment." Choice Hotels, 491 F.3d at 177 (quoting Misco, 484 U.S. at 38).

Cardinal has failed to demonstrate that the arbitrator disregarded the plain language of the sublease or disregarded the applicable law. The sublease agreement provides that it is subject to termination if Cardinal fails to undertake to remedy its default "to [Aero-Smith's] reasonable satisfaction . . . for a period of thirty (30) days." J.A. 63. The language does not describe the required duration of the attempt to remedy the default that Cardinal must make. Rather, it describes the amount of time that Cardinal must not allow to go by before making its attempt. This created an objective standard by which the arbitrator was to judge the efforts of Cardinal to remedy their non-compliance with the terms of the sublease agreement. The arbitrator did just that, expressly finding that Cardinal was continually noncompliant with the standards set forth in their sublease, even after being placed on notice of the default. The arbitrator's use of the word "within" in the award was not used to place an additional term into the contract, but to explain that Aero-Smith's dissatisfaction with the remedial steps taken by Cardinal was reasonable. The arbitrator found

13

that, "[h]ad Cardinal and [its newly appointed manager] discontinued their unauthorized use of the [hangar] for aircraft storage and maintenance <u>within</u> thirty days of receipt of the notice of breach, obtained the requisite [hangar] insurance and named the Authority and Aero-Smith as named insured, and cooperated fully with the Airport manager and the Authority, this might be a closer question." J.A. 116. Instead, they "did none of these things, . . . persisted in their unauthorized use of the [hangar] with the Authority and Aero-Smith at risk, and hid their misconduct from the Authority." J.A. 116. Thus, as found by the arbitrator, Cardinal "chose to continue its default" and "conceal its misconduct" instead of undertaking to cure the breaches. J.A. 116. In short, we do not perceive the arbitrator's use of the word "within" as an assertion that the sublease required that every deficiency must be cured in thirty days, but rather that Cardinal did not take reasonable steps to correct its noncompliant operations and, therefore, did not attempt to cure the default with the thirty days to the reasonable satisfaction of Aero-Smith.

C.

Finally, Cardinal claims that the arbitration award must be set aside because it orders "Aero-Smith and/or JetLink" to pay the $228,891.30 award, even though JetLink was not added to the

arbitration proceedings after it purchased Aero-Smith's assets. We are unpersuaded.

First, contrary to Cardinal's assertion, the terms of the sublease agreement, which provides for when outside parties may be joined in an arbitration under the agreement, did not require JetLink's joinder in the arbitration proceedings and, while the provision may well have allowed it, neither party took steps to join JetLink.

Second, as recognized by both the arbitrator and the district court, the failure to join JetLink in the arbitration proceedings does not affect the validity of the award as rendered or JetLink's legal obligation to render payment pursuant to it. When Aero-Smith sold all of its assets, including the sublease agreement, to JetLink, JetLink "step[ped] in the shoes of [its] assignor," Aero-Smith, and became liable to render payment to Cardinal upon the latter's surrender of the premises. Cook v. Eastern Gas and Fuel Assocs., 39 S.E.2d 321, 326 (W. Va. 1946). Additionally, even as a nonsignatory, JetLink rendered itself bound by the arbitrator's decision. Generally, a party may not be subject to arbitration without consent. See State ex rel. City Holding Co. v. Kaufman, 609 S.E.2d 855, 859 (W. Va. 2004) (per curiam); International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000).

15

However, a nonsignatory "can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." International Paper, 206 F.3d at 416. For example, the doctrine of equitable estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. at 418. Here, JetLink assumed the benefits of the arbitration provisions by taking possession of the hangar, voluntarily joined in this action to enforce the award, admits that it is bound by the arbitration award as Aero-Smith's successor, and represents that it stands ready to pay the amounts due to Cardinal. As a result, the arbitration award need not be set aside merely because the parties did not seek to officially add JetLink as a party to the arbitration proceedings below.

III.

For the foregoing reasons, the decision of the district court granting summary judgment to the plaintiffs is hereby affirmed.

AFFIRMED

16