# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**CDS Family Trust, LLC, a Delaware Limited Liability Company, Plaintiff Below, Petitioner**

**vs) No. 13-0375** (Grant County 12-C-8)

**ICG, Inc., and Vindex Energy Corp., a West Virginia Corporation, Defendants Below, Respondents**

**FILED**

January 15, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner CDS Family Trust, LLC, ("CDS") by counsel Timothy M. Miller and Benjamin W. Price, appeals the March 11, 2013 order of the Circuit Court of Grant County granting Respondents ICG, Inc. and Vindex Energy Corporation's motion for judgment on the pleadings and confirming the arbitration panel's award. Respondents appear by counsel John Philip Melick and Albert F. Sebok.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

CDS is a Delaware limited liability company that owns certain real estate in Grant County, West Virginia.[1] Respondent Vindex Energy Corporation ("Vindex"), is a West Virginia Corporation. Respondent ICG, Inc., is the parent company of Vindex. On January 30, 2007, CDS, as lessor, and Vindex, as lessee, entered into a Master Lease Agreement ("Lease"), whereby Vindex was to mine and remove coal on certain leased premises.

Under § 3 of the Lease, entitled "Term," the parties agreed that the Lease "shall extend until all mineable and merchantable coal which can be economically mined and removed has been mined and removed from the Leased Premises." Pursuant to the Lease, Vindex began monthly payments to CDS of advanced pre-paid minimum royalties of over $45,000 through November of 2008, for a total over $500,000. These payments fulfilled the remaining unpaid

---

[1] CDS was created by the will of Carl DelSignore, one of three brothers who created Buffalo Coal Company ("Buffalo"). Mr. DelSignore, through his will, appointed several trustees to manage the trust and to continue the operations of Buffalo.

monthly advanced minimum royalties under a previous lease.[2] Vindex also agreed to pay $180,000 of additional royalties from December of 2008 to November of 2009. The payments of the advanced royalties ended in November of 2009. In total, Vindex paid over $3.2 million dollars to CDS.

By 2010, Vindex had not commenced any mining on any of the properties leased. CDS sent notice of default to Vindex for its failure to commence mining within the initial two-year term of the Lease, and advised Vindex it had thirty days to cure the default. Vindex disputed the purported default. CDS then informed Vindex that the Lease was terminated, automatically, by its terms, and that Vindex had forfeited and abandoned its right to mine the properties. Vindex denied this allegation, and on April 30, 2010, it filed a demand for arbitration pursuant to the Lease. In § 11 of the Lease, the parties agreed that "[a]ll disputes and disagreements between the parties that may arise out of or relating to the Lease shall be decided by binding arbitration."

The parties selected an arbitration panel, and the panel held a full day hearing. The panel unanimously decided on August 18, 2011, that "Vindex is not in violation of the Lease; has not breached, abandoned, or forfeited the Lease; did not fraudulently induce CDS to enter the Lease; and that the Lease continues in full force and effect as written." The arbitration panel concluded that the timeline did not support CDS's claim that Vindex's actions in not mining the property were unreasonable or an abandonment of the Lease.[3]

---

[2]We note that on March 30, 2001, CDS and Buffalo entered into a Master Lease Agreement (2001 Lease), whereby CDS leased to Buffalo certain properties containing coal reserves "for the purpose of mining, processing and transporting the coal" thereon. Pursuant to the terms of the 2001 Lease, Buffalo was to pay minimum advanced royalties in the annual amount of $700,000. Buffalo commenced mining immediately, and the term of the 2001 Lease was to extend until all the mineable and merchantable coal was mined and removed.

In 2002, Buffalo struggled financially due to operational and market factors. On September 13, 2002, CDS and Buffalo entered into the First Amendment to Master Lease Agreement to reduce the monthly minimum payments. This agreement required Buffalo to pay a lump sum royalty in the amount of $3,282,624, payable in seventy-two consecutive monthly payments, fully recoupable against coal to be mined.

Mining continued, but in 2006, Buffalo filed for Chapter 11 bankruptcy. With the approval of the bankruptcy court, Vindex agreed to purchase Buffalo's assets from the bankruptcy estate. The assets acquired by Vindex included the leased premises subject to the 2001 Lease, among others. The bankruptcy court also rejected a challenge by certain creditors to CDS's retention of the advanced minimum royalties paid by Buffalo prior to filing for bankruptcy.

As a result of Vindex's purchase of Buffalo's assets, Vindex and CDS entered into a new Lease on January 30, 2007, which is the subject of this appeal. Pursuant to the terms of the 2007 Lease, Vindex agreed to bring current all delinquent royalty and lump sum payments, and to pay additional royalties pertaining to the original lease. The terms of the 2007 Lease were essentially the same as the 2001 Lease, but the production royalties were increased.

[3]The arbitration panel explained:

2

On February 13, 2012, CDS filed a petition for writ of prohibition in the Circuit Court of Grant County to "set aside" the arbitration panel's decision. CDS asserted that the arbitration panel's conclusions were "palpable mistakes of law, necessitating judicial intervention." Vindex answered and argued that the matter was governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and that CDS's claims were both untimely and inadequate in their substance. Vindex also filed a counterclaim seeking confirmation of the arbitration panel's decision so it would be binding in the judicial record.

After closure of the pleadings, Vindex filed a motion pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure, requesting that the circuit court enter judgment on the pleadings. CDS filed its own dispositive motion, asserting for the first time its contention that the Lease expired by its own terms prior to the arbitration hearing, and the arbitration panel lacked authority to interpret the Lease.

By order entered March 11, 2013,[4] the circuit court considered Vindex's motion for judgment on the pleadings as one for summary judgment, and granted the motion. The circuit court found that CDS's request for a writ of prohibition was not an appropriate filing because the arbitration panel's decision did not issue from a "lower tribunal" over which the circuit court exercised control. The circuit court treated the matter as an action to vacate the arbitration award and found that CDS failed to satisfy its burden.[5] The circuit court stated that CDS's assertion that

---

> In the Panel's view, Vindex had less than four months since Vindex paid CDS the last monthly, pre-paid, advanced minimum or additional royalty payment to begin mining before CDS declared default and threatened within 31 days to terminate the Lease. The following fifteen months has been devoted to these arbitration proceedings and, among other things, to whether Vindex did, or did not have, the right to mine the reserves. It is unreasonable to believe that a prudent operator would commit the time, money and effort necessary to mine coal when its right to do so is challenged by its Lessor. There is credible evidence in the record from Vindex that it had applied and secured all but one of the mining related permits for the Lease tracts and that Vindex also considered this Spring beginning steps to mine some of the Hanlin coal. However, CDS's claim that the Lease was terminated, along with permit problems in removing spoil, convinced Vindex to look elsewhere to the Stoney North mine, which Vindex is pursuing now.

[4]The circuit court entered a combined order applicable to this case and a separate trespass action between CDS, CSX Transportation, Inc., ICG, Inc. and Vindex (Civil Action No. 11-C-46) that is the subject of a separate appeal before this Court No. 13-0376.

[5]The circuit court rendered a decision on the merits of the case notwithstanding the fact that it noted this action was filed outside the three-month statute of limitations period for challenges to an arbitration decision under the FAA. 9 U.S.C. § 12. Accordingly, we do not address petitioner's argument that the motion was in fact timely under the West Virginia Arbitration Act.

3

the arbitration panel lacked authority to consider whether the Lease automatically terminated was "not well received" because CDS "availed itself of the arbitration proceedings prior to bringing this matter[.]" The circuit court found that "[o]nly after the arbitration decision was announced did CDS allege as a defense to the action that the very contract containing the arbitration provision had expired making the arbitration unnecessary." Finally, the circuit court confirmed the arbitration panel's award.

CDS appeals this ruling and argues that the circuit court should have vacated the arbitration panel's decision because it is not supported by the terms of the Lease or applicable law. CDS also asserts that the arbitration panel's decision exceeded the scope of the issues submitted to arbitration.[6] For the following reasons, we find that CDS has failed to meet its burden necessary to vacate the decision of the arbitration panel under the standards set forth in the FAA. Therefore, we affirm the decision of the circuit court.

We begin with our standard of review. According to West Virginia Rule of Civil Procedure 12(c), in part, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." In the instant case, the circuit court considered Vindex's motion for judgment on the pleadings as one for summary judgment, and granted the motion. As a result, we will treat the circuit court's order as a summary judgment order. This Court has held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

CDS contends that the circuit court should have vacated the arbitration panel's decision because the panel erroneously concluded that Vindex's failure to begin mining under the Lease was reasonable. CDS argues that Vindex's failure to commence mining after the final payment of the advanced minimum royalties, constituted a violation of the duty to commence mining within the primary term. We find no merit in these claims because they are arguments that the arbitration panel interpreted the Lease erroneously. However, the issue before this Court is simply whether the arbitration panel interpreted the parties' Lease, not whether the panel construed the Lease correctly. We recognize that "the scope of judicial review for an arbitrator's decision is among the narrowest known at law." *MCI Constructors, LLC v. City of Greensboro,* 610 F.3d 849, 857 (4th Cir. 2010).[7]

---

[6]As it did before the circuit court, CDS also argues that the Lease expired by its own terms prior to the arbitration hearing, thus depriving the panel of its authority to act. We find that this argument lacks merit because CDS never raised it in arbitration, as required under § 11 of the Lease. CDS cannot "voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator." *Int'l Chem. Workers Union, Local No. 566 v. Mobay Chem Corp.*, 755 F.2d 1107, 1112 (4th Cir. 1985) (quoting *United Steelworkers v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981)).

[7]The very limited statutory grounds for vacating an arbitration award are: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . .; (3) where the arbitrators were guilty of misconduct . . .; or (4)

4

Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The United States Supreme Court recently stated

> that convincing a court of an arbitrator's error -- even his grave error -- is not enough. So long as the arbitrator was "arguably construing" the contract -- which this one was -- a court may not correct his mistakes under § 10(a)(4). *Eastern Associated Coal,* 531 U.S. [57], at 62 (internal quotation marks omitted). The potential for those mistakes is the price of agreeing to arbitration. As we have held before, we hold again: "It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel,* 363 U.S. [593] at 599. The arbitrator's construction holds, however good, bad, or ugly.

*Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2070-71 (2013).

We find that the decision of the arbitration panel survives the limited judicial review allowed by the FAA. 9 U.S.C. § 10(a)(4).[8] CDS chose arbitration when it entered into the Lease, "and it must now live with that choice." *Oxford*, 133 S.Ct. at 2071. Therefore, we find that the circuit court properly refused to allow CDS "to re-litigate the issues which had been arbitrated between the parties."

Turning to the remaining assignment of error, we find that the arbitration panel's decision did not exceed the scope of the issues submitted to arbitration. The issues presented at the outset and throughout the arbitration proceeding included "[w]hether Lessee is in default of any obligation under the Lease in respect of the "commence[ment], develop[ment] and mining [of] the demised property within a reasonable time" and, if so, the cure or remedy for any such default. Because the Lease does not specify circumstances giving rise to forfeiture, the panel rested its decision on equitable principles: Vindex had paid $3.2 million to CDS in advanced royalties, but, with reason, had yet to begin mining operations and, therefore, had not reaped its

---

where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

[8]The FAA is applicable to this case because: (1) there was an agreement in writing providing for arbitration; and (2) the contract evidences a transaction involving interstate commerce considering the parties' different states of residence. *Am. Home Assur. Co. v. Vecco Concrete Const. Co., Inc.,* 629 F.2d 961, 963 (4th Cir. 1980). Nevertheless, even if we were to find that the Lease is controlled by the West Virginia Arbitration Act, CDS still fails to meet its heavy burden to vacate the arbitration panel's decision because there is no showing of actual fraud. "Once it appears . . . that the litigants are parties to a proper commercial contract and knowingly bargained for an arbitration clause, we will not inquire further into the correctness of the arbitrator's result in the absence of actual fraud." *Barber v. Union Carbide Corp.*, 172 W.Va. 199, 203, 304 S.E.2d 353, 357 (1983).

benefits of the Lease. Forfeiture would provide CDS with a windfall of $3.2 million but leave Vindex with nothing to show for the consideration it paid.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 10, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II